**UNITED STATES**

v.

**COMSTOCK EXTENSION MINING
CO., Inc. et al.**

No. 13614.

United States Court of Appeals,
Ninth Circuit.

June 30, 1954.

Warren E. Burger, Asst. Atty. Gen., Melvin Richter, Paul A. Sweeney, Cornelius J. Peck, Attys., Dept. of Justice, Washington, D. C., Jack D. H. Hays, U. S. Atty., E. R. Thurman, Asst. U. S. Atty., Phoenix, Ariz., for appellant.

Langmade & Sullivan, George T. Wilson, Phoenix, Ariz., for appellees.

Before HEALY, ORR and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

One of the declared purposes of the Surplus Property Act of 1944, 50 U.S.C. A.Appendix, § 1611 et seq., was "To afford returning veterans an opportunity to establish themselves as proprietors of agricultural, business, and professional enterprises". 58 Stat., Chapter 479, p. 765.[1]

The United States government thinks that advantage was taken of it in the early days of June, 1946, when a veteran, John M. Ross, secured an International 2½ ton dump truck from the War Assets Administration at the Navy base at Port Hueneme, California. The veteran Ross had been accompanied to California from Phoenix by Tony Trojanovich, president of Comstock Extension Mining Co., Inc., and Walter J. Crawford. In securing the truck, Ross made a false representation in writing to the effect that he, Ross, intended to use the truck in his little (non-existent) trucking business. Ross obtained the truck, using the money of Trojanovich's company, Comstock Extension Mining Co., Inc., to make the purchase. Ross paid the government for the truck with a cashier's check of the Valley National Bank of Phoenix in the amount of $2,917.97 plus some $235 in cash. Before going to California, Trojanovich had purchased the cashier's check, which was payable to the Treasurer of the United States, with a Comstock check. Also, before going to California he had given Ross the company's check for $291.80 for his commission or services. This sum Ross divided with Crawford.

Within a few minutes after Navy personnel released the truck, Trojanovich and Ross were in the vehicle and driving away from the Navy base.

The same day, appropriate papers were signed by Ross and handed to Trojanovich which would permit Trojanovich or his company to get a proper certificate of title for the truck in Arizona. The next day Trojanovich continued on the trip to Phoenix, Ross accompanying him only to Ontario, California.

The government, by its complaint, asked alternatively for the penalties under Section 26 of the Surplus Property Act. The complaint alleged that a conspiracy had been entered into among Ross, Crawford and Comstock Extension Mining Co., Inc., acting through its president, Tony Trojanovich, for the purpose of securing government surplus property, and that the parties defendant had used a fraudulent trick, scheme or device. The two individual defendants testified upon the trial.

The essence of Trojanovich's defense was that he never knew there was anything wrong about the veteran's reselling the truck.

Some time after the conclusion of the trial, the court made findings of fact and entered judgment in favor of the defendants, finding that there was no conspiracy and no fraudulent trick, scheme, device or combination for the purchase of the truck.

Returning to the evidence, it appears that the veteran Ross, while in Port Hueneme, alone dealt with the government employees handling the disposal of trucks, Crawford and Trojanovich remaining where the trucks were parked on the parade ground.

---

[1] The Surplus Property Board was established to administer the act, and the board was authorized to prescribe regulations to effectuate the act's provisions. Surplus property was handled successively by different agencies of the government. At the time of the facts here at issue, it was under the War Assets Administration.

The form of the chain of title papers on the truck would indicate, first, a sale by the United States to Ross and, then, a resale by Ross to the Comstock Company. However, the trial court found:

"That the defendant, Comstock Extension Mining Co., Inc., a corporation, through its President, Tony Trojanovich, purchased one two and one-half ton dump truck belonging to the United States."

We think this finding would be correct if at the end of the finding the court had added, "the purchase being made from the said United States, the defendants using one John M. Ross, a war veteran, as the nominal purchaser."

■ That is, Ross never beneficially owned the truck. He paid for the truck with a cashier's check purchased by Comstock payable to the Treasurer of the United States. To the extent the cashier's check was inadequate, Trojanovich on the spot at Port Hueneme gave Ross additional cash, which was turned over by Ross along with the cashier's check to the government cashier at the base. Ignoring illegal aspects which might cause a court to leave Ross and Comstock where it found them, we would say the moment Ross received the title papers and the truck from the United States he was an agent who held the truck in trust and who was bound to turn it over to its beneficial owner, Comstock.

Trojanovich, having caused the cashier's check to be made payable to the Treasurer of the United States, cannot be heard to say he thought Ross owned the truck at any time material to the case.

Taking the view that Ross was the agent of Trojanovich and his company in getting the truck, as we trace the purchase through the various government documents involved in the transactions, we find that Ross had actual knowledge that the trucks were on government priority for veterans. (No suggestion is made that any defendant was entitled to a veteran's preference.)

Also, as above stated, to get the truck Ross made the false representation that the truck was for his use in his business of general trucking at a time when he had no such business.

■ We hold, under the circumstances, that the defendants were chargeable with Ross' knowledge and his acts, Trojanovich and Comstock because Ross acted for them, and Crawford because he was, in effect, an active joint venturer of Ross in the deal. See Restatement of Law of Agency, §§ 272, 274, 276, 278.

On some minor points, the veteran Ross was confused as to details. However, as we read the record, his testimony is not impeached that the defendants knew he, Ross, was a veteran and knew he was getting the truck from the government because he was a veteran.

■ All of the defendants were chargeable with the knowledge of the regulations in the Federal Register governing the sale of surplus trucks. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10. For example a regulation and set aside order issued as late as May 3, 1946, 11 F.R. 5125 (five weeks before the transaction at Port Hueneme) show all $2\frac{1}{2}$ ton trucks on priority. It does not appear from the record brought here that the government pointed out the published regulations affecting surplus property beginning on October 10, 1945, with 10 F.R. 12,849, and including those of May 3, 1946.

Chargeable with Ross' actual knowledge and with constructive knowledge of the regulations, the defendants cannot now be heard to say that they didn't know there was anything wrong with the purchase. While one may feel sorry for Merrill Brothers in Federal Crop Insurance Corp. v. Merrill, supra, caught by a regulation tucked away in the Federal Register, a reading of the record here creates little sympathy for these defendants.

■ In our conclusion that the judgment below was wrong, we have given

effect to the rule that all controverted questions of fact must be taken in their most favorable possible light for the defendants who prevailed at the trial. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

We hold that a trick was used to get the truck away from the War Assets Administration and that all defendants are chargeable with it.

Judgment should be entered for the plaintiff against the defendants for the sum of $3,160.97, interest and costs.

We take it that the case in 1951 was presented below on the theory of sale to Ross and resale by Ross to Comstock. Nothing was pointed out to the trial court, from the record we have, that would indicate to it that a resale would not have been permissible. However, this court must apply its view of the law as it sees it. Therefore, the judgment is reversed.[2]

---

**2.** Cf. American Purchasing Co. v. Landwehr, 192 Misc. 548, 80 N.Y.S.2d 193.