**CENTENNIAL INSURANCE COMPA-NY, a Corporation, Appellant,**

v.

**Dave SCHNEIDER, Doing Business as Dave Schneider Wholesale Jewelry, Appellee.**

**No. 15337.**

United States Court of Appeals Ninth Circuit.

Aug. 20, 1957.

Rehearing Denied Sept. 26, 1957.

Hauerken, St. Clair & Viadro, George H. Hauerken, San Francisco, Cal., for appellant.

Betts, Ely & Loomis, Walter Ely, Los Angeles, Cal., Samuelson & Buck, C. Ransom Samuelson, Long Beach, Cal., for appellee.

Before STEPHENS, Chief Judge, and BONE and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

Centennial Insurance Co. (hereinafter "Centennial"), defendant below, appeals from a judgment entered by the District Court. The action was brought by Dave Schneider, doing business as Dave Schneider Wholesale Jewelry, to recover on a policy of insurance issued by Centennial to appellee on August 15, 1954, and continuing in force for a period of one year. The claimed loss of jewelry and their carrying cases allegedly covered by the policy occurred on December 3, 1954.

On the morning of December 3, 1954, at about 10:00 A.M. appellee left his place of business. As a wholesale jeweler appellee traveled by car from retailer to retailer, carrying the jewelry to be displayed in two specially fitted cases which he carried in the trunk of his car. Following his lunch, he drove to Bruce Jewelers in Inglewood, California, removed the cases from the trunk of his car, took them into the jewelry store, displayed his line of jewelry, returned the cases to the trunk, and drove to Joy Jewelry Company, also in Inglewood.

Appellee did not remove his cases at Joy Jewelry Co. He did not enter the premises, but talked with one of the buyers at Joy, Mr. Stelzer, in front of the store so he could see his car. Appellee and Stelzer got into appellee's car, drove around the block and into a blind alley and parked appellee's car behind a new car (a Ford and hereinafter called "Ford") purchased by Stelzer for his wife. Both appellee and buyer apparently got into the Ford car, the buyer then showing appellee the dashboard equipment. Appellee testified he had locked his car, and adjusted the rear view mir-

ror of the Ford so that he could see his car. The inspection of the Ford lasted from five to fifteen minutes. Appellee then returned to his car and drove about four miles to the store of another customer, California Premium Service.

The drive to California Premium Service took some forty-five minutes because of heavy traffic at that hour. Appellee parked his car close to California Premium Service and claims that he watched it at all times while talking to Mr. Nigro of California Premium Service, except for about one minute when he examined a diamond, and during this time Mr. Nigro watched appellee's car. It was after inspecting the diamond that appellee opened the car trunk to remove his cases, and found both cases were not there. Centennial was notified and the police called.

Appellee's car was a 1954 Cadillac Coup de Ville model. The trunk latch locked automatically when the trunk door or lid was closed. The trunk latch showed no evidence of tampering. The trunk lid was of the type which rises if not latched shut because of a spring mechanism. Testimony was conflicting as to how high the trunk lid would have to rise or would have to be raised up for appellee to notice it by looking into the rear view mirror. At trial appellee testified it would have to be up all the way for him to see it in his rear view mirror. The jewelry cases were about 4½ feet tall, 2½ feet wide and 20 inches in depth, weighed about 25 pounds when empty, and about 65 pounds (counting the jewelry contents) on the day in question. Each case was on wheels to facilitate moving it. Counsel for Centennial elicited by questioning at trial (and strongly emphasizes in its brief in this Court) that between the time he left his place of business at 10:00 A.M. and the time he discovered the loss of the jewelry, about 4:30–5:00 P.M., appellee made no use of a rest room, the implication being that appellee probably did make use of a rest room during this seven hour period, forgot about it, and that it was during this time when the car would be out of his sight that the theft was committed.

Both parties seem to entertain the view that the loss was a result of a *theft*, and the District Judge found the jewelry to have been *stolen*. Major controversy centers on clause 5(I) of the policy, which reads:

"5. This policy insures against all risks of *loss of or damage to* the above described property arising from any cause whatsoever *except:*

\* \* \* \* \*

"(I) *Loss or damage to property insured hereunder while in or upon any automobile,* motorcycle or any other vehicle *unless, at the time the loss occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle.* This exclusion shall not apply to property in the custody of a carrier mentioned in Section 2 hereof, or in the custody of the Post Office Department as first class registered mail." (Emphasis supplied.)

Appellee argues that the language in the exception clause, (I), " \* \* \* loss or damage *to* property while in or upon an automobile \* \* \*," is ambiguous, and should be construed most strongly against Centennial. Appellee also asserts that " \* \* \* loss or damage *to* property \* \* \*" can mean only *damage to* property and does not include *theft* as a theft involves "loss *of*" property rather than "loss \* \* \* *to*" property. Thus, says appellee, the exception clause does not apply in this case. This is a clever argument, and is indicative of the thoroughness with which counsel has represented appellee. However, we cannot accept the argument. We believe the language of the policy excepting *"loss or damage to* property" expresses the intention to except *theft of* property from an automobile on the terms therein stated, and not alone to except *damage* to property (assuming

damage means something entirely different from theft). We are supported in this view by other decisions which have found similar language to be reasonably clear and unambiguous, and applied such language to cases of theft. Cf. Greenberg v. Rhode Island Ins. Co., 1946, 188 Misc. 23, 66 N.Y.S.2d 457, 459; Princess Ring Co., Inc., v. Home Ins. Co., 1932, 52 R.I. 481, 161 A. 292, 293.

It is appellee's further contention that direct testimonial evidence shows that the insured property was not taken from the car while appellee was out of the car since at all such times the car was watched and no one watching saw anyone open the trunk. From this appellee argues that he not only must have been, but that he was, in the car at the time of the theft. This apparently was the view of the trial judge as findings were made that the " * * * jewelry and sample cases and trays were stolen from the trunk of plaintiff's automobile at a time when the plaintiff was in such vehicle."

While testifying, appellee, over objection of Centennial's counsel, gave as his opinion to explain the occurrence of the loss, that it probably happened during the time that appellee was driving to California Premium Service after leaving Stelzer following examination of Stelzer's Ford. The traffic moved slowly, there were many stops. Appellee was of the opinion the thief (or thieves) somehow removed the cases and contents while his car was stopped, loaded them into another vehicle and made a getaway.

Centennial asserts that such a view of the "theft" must be rejected as "inherently incredible;" that the theft could not have happened while appellee was in the car without appellee being aware of its commission.

■ Under Rule 52(a) of the Fed. Rules Civ.Proc., 28 U.S.C.A., a finding is clearly erroneous when, although there is evidence to support it, a reviewing court on reviewing the entire evidence is left with a definite and firm conviction that a mistake has been made. United States v. U. S. Gypsum Co., 1948, 333 U.S. 364,

395–396, 68 S.Ct. 525, 92 L.Ed. 746; Smyth v. Erickson, 9 Cir., 1955, 221 F.2d 1, 4; Alaska Freight Lines v. Harry, 9 Cir., 1955, 220 F.2d 272, 275. Cf. United States v. One 1950 Buick Sedan, 3 Cir., 1956, 231 F.2d 219, 223, on drawing reasonable inferences from "basic facts."

After a complete study of the evidence we are left with the conviction that a mistake has been made. We reach this conclusion for two reasons. In the first instance, the testimonial evidence is not convincing that appellee or others with whom he did business that day could adequately *see* the trunk of the car at all times. Of particular interest is the testimony concerning the several minutes that appellee was inside the Ford examining it with Stelzer of Joy Jewelry Co. If we take the testimony most favorable to appellee (as we are required to do) United States v. Comstock Extension Mining Co., Inc., 9 Cir., 1954, 214 F.2d 400, 403, we find these facts: the Stelzer Ford was parked in a blind alley; the front of appellee's Cadillac was parked closely behind the rear of the Ford; the rear end of the Cadillac was about parallel with the sidewalk running along a street which ran at right angles to the alley; appellee was in the front seat of the new Ford car attempting to watch the trunk of his car by looking into the rear view mirror while he also looked at the instrument panel of the Ford and talked with Stelzer; appellee testified that he couldn't see the back of his car " * * * very well, because the back was quite a ways back * * *;" appellee looked into the rear view mirror " * * * off and on * *" as Stelzer showed him the panel in the Ford; appellee spent (by the most favorable testimony) five to seven minutes in the Ford.

We believe this testimony substantially derogates from appellee's insistence that he could see his car at all times. These facts are specially significant when considered with that part of appellee's theory which postulates that the thief (or thieves) in some way had procured a key which fitted the lock and could open

the trunk with ease and dispatch. With a key to expedite opening, and with appellee having a poor view of the trunk, the trunk could have been opened, raised to a height sufficient to remove the cases, the theft completed and the getaway made without appellee being conscious of the crime. We believe that Centennial has shown by appellee's testimony that he did not always have a clear view of his car when not in it, so that the theft could have been committed while appellee was not in the car and without appellee knowing of or seeing its commission.

We also believe that it is most doubtful that the two cases with their contents could have been removed from the trunk while appellee was in the car without appellee being aware at the time that a theft was taking place, though he might not have been able to prevent its completion. We must remember that each case measured $4\frac{1}{2}$ feet tall, $2\frac{1}{2}$ feet wide and 20 inches deep, and weighed (with contents) sixty-five pounds each. Each case was in the trunk of an automobile so that the trunk lid would have to be raised to remove it. Evidence is not clear as to how high the trunk lid would have to be raised, but it would have to be raised at least 20 inches, as this is the minimum measurement of the cases. Probably the trunk would be opened wider so the thief (or thieves) could more easily take hold of the cases and remove them without dragging them across the car frame and edge of the trunk, which would shake the vehicle, make considerable noise, and alert the driver. And when a sixty-five pound weight is removed from the rear of a car, the car probably would move or sway sufficiently to arouse the driver to the fact that something is happening to his car; he will look about. And further, the thief (or thieves) must have shut the trunk with sufficient force to lock it shut as appellee testified that if not latched properly the trunk lid would rise, especially if he drove. Appellee testified that it did not rise while he drove that day, and that it was locked when he went to remove the cases at Cal-

ifornia Premium Service. Yet, through all of these possible steps which the thief (or thieves) would have taken to complete the theft, appellee was unaware of any noise in, or unusual or surprising motions of the car.

But even if the appellee might not notice such events, drivers moving behind appellee would certainly have seen the thief (or thieves) and probably those drivers, when seeing a person (or persons) surreptitiously approach appellee's car and without any sign of approval by appellee remove two large cases and place them in another car or take them to the sidewalk, would sound their horns or call. But even if there was complete silence from all the other users of the road at that time, and even if the trunk could not be seen in the rear view mirror unless raised to its maximum height, the thief (or thieves) would have had to carry or wheel the cases to the sidewalk or to another vehicle, which would have given appellee an excellent opportunity to see at least part of the commission of the crime. A person (or persons) walking about in a busy street, even if traffic is temporarily halted, carrying or wheeling large cases would attract attention.

But the basic theory of appellee is that the theft was committed by removing the cases from his car and placing them in a getaway car while appellee was held up by slow moving traffic. This directly conflicts with appellee's theory that the crime was accomplished this way so that a fast escape could be made. If traffic was "bumper to bumper," (as appellee testified) so that appellee could not move speedily, it seems clear that a speedy getaway of the thieves would be impossible.

Centennial has shown by the testimony of appellee himself that he could not see his car clearly at all times when he was out of it. This overcomes appellee's assertion that the theft was committed while appellee was in the car as he could observe the car at all times and no one removed anything from the trunk while he watched it. And we believe that

appellee's own theory of the theft is incredible. After reviewing the entire record we entertain the firm and definite conviction that a mistake was made by the trial court. On the basis of all the evidence in this case, we believe that in finding that the jewelry was stolen from the car trunk at a time when appellee was in such vehicle, the lower court bridged an impassable chasm with an assumption.

The cause is remanded to the District Court with instructions to vacate the judgment and to enter judgment that appellee take nothing.