[No. S109609. Feb. 23, 2004.]

E.M.M.I. INC., Plaintiff and Appellant, v.
ZURICH AMERICAN INSURANCE COMPANY, Defendant and
Respondent.

---

**COUNSEL**

Quisenberry & Kabateck, Kabateck & Kropff, Kabateck & Garris, John N. Quisenberry, Brian S. Kabateck, James B. Kropff, Heather M. Mason, Suzanne L. Havens Beckman and Jerilyn Jacobs for Plaintiff and Appellant.

Cummins & White and Annabelle M. Harris for Vartan Karlubian and Cummins & White as Amici Curiae on behalf of Plaintiff and Appellant.

Bishop, Barry, Howe, Haney & Ryder, Mark Koop, Jonathan Gross and Jay E. Framson for Defendant and Respondent.

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—We are called upon in this case to interpret the scope of an exception to a provision excluding coverage in a "jeweler's block" insurance policy. The provision at issue exempted from coverage jewelry stolen from a vehicle unless the insured was "actually in or upon such vehicle at the time of the theft." The question presented is whether the exception to that exclusion applies when the insured is not in the vehicle but is in close proximity to the vehicle and is attending to it when the theft occurs. We conclude the vehicle theft exclusion, as a whole, is ambiguous and fails to plainly and clearly alert insureds that there is no coverage if a theft occurs when the insured has stepped out of the vehicle but remains in close proximity and is attending to it. We therefore hold that coverage is not precluded as a matter of law and reverse the judgment of the Court of Appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are simple and essentially undisputed. On February 17, 2000, Brian Callahan, a jewelry salesman, left his home with two "hard cloth garment bags" containing jewelry (some of which belonged to E.M.M.I. Inc., a manufacturer and marketer of jewelry) in the trunk of his vehicle. Shortly after driving away from his home, he heard a clanking noise emanating from the rear of the vehicle. Callahan stopped on the side of the road to investigate the source of the noise, got out of the car and closed the car door but left the engine running. He walked to the rear of the vehicle and, as he crouched down to visually inspect the exhaust pipes, he felt someone pass quickly by him. When he looked up, he saw an individual get into his car and drive away. Callahan was no more than approximately two feet from the car during the entire time he was outside the vehicle until the time of the theft. The police subsequently found the vehicle, but the jewelry was missing.

E.M.M.I. was insured under a jeweler's block insurance policy issued by Zurich American Insurance Company (Zurich). The policy insured E.M.M.I. against "risks of direct physical 'loss' to the covered [jewelry] except those causes of 'loss' listed in the Exclusions." Under "Exclusions" the policy provided that Zurich would "not pay for 'loss' caused or resulting from . . . [t]heft from any vehicle unless, you, an employee, or other person whose

only duty is to attend to the vehicle are *actually in or upon* such vehicle at the time of the theft." (Italics added.) Callahan was specifically designated to carry E.M.M.I.'s jewelry.

E.M.M.I. submitted a claim to Zurich under the policy. Zurich's field adjuster was instructed to ascertain whether Callahan had been physically touching the car when the theft occurred, and therefore had been "in or upon" the car. Because E.M.M.I. was unable to show that Callahan had been physically touching the vehicle when the theft occurred, Zurich denied the claim.

On July 20, 2000, E.M.M.I. filed a lawsuit against Zurich for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices. E.M.M.I. also sued its insurance agent, Vartan Karlubian, for professional negligence.

The parties, E.M.M.I., Zurich, and Karlubian, subsequently filed cross-motions for summary judgment and summary adjudication. The superior court granted Zurich's motion for summary judgment and denied E.M.M.I.'s and Karlubian's motions. The court found that "where the insured was outside the car, crouched down, inspecting the underneath exhaust pipes, before the sequence of events of theft commenced, there unequivocally is no coverage under terms requiring the insured to be in or upon the vehicle at the time of theft."[1]

The Court of Appeal affirmed the resulting judgment. It ruled that "[a]lthough [the salesman] was in close proximity to the car, he was not actually in or upon it." We granted review.

## II. Discussion

■ Jeweler's block insurance, conceived at the turn of the last century, provides coverage under a single policy for the "various risks inherent" in the jewelry business. (Annot., Construction and Effect of "Jeweler's Block" Policies or Provisions Contained Therein (1994) 22 A.L.R.5th 579; 1 Couch on Insurance (3d ed. 1997) § 1:57.) It "is different from most other traditional forms of property insurance which are considered 'named-peril' insurance policies. Under named-peril policies, an insurer agrees to indemnify its insured for losses resulting from certain risks of loss or damage which are specifically enumerated within the provisions of the policy. In contrast, under a jewelers' block policy all risks of loss or damage to jewelry may be insured,

---

[1] The trial court also sustained Zurich's evidentiary objections relating to E.M.M.I.'s theory that Callahan may have been the victim of an organized Columbian crime gang.

subject to certain exceptions." (*Star Diamond, Inc. v. Underwriters at Lloyd's, London* (E.D.Va. 1997) 965 F.Supp. 763, 765 (*Star Diamond*).) Thus, the coverage language in this type of insurance policy is quite broad, generally insuring against all losses not expressly excluded. In the present case, the policy excluded from coverage theft from a vehicle unless the insured or a designated employee was "actually in or upon" the vehicle at the time of the theft. As the Minnesota Supreme Court has observed, "The [exclusion] was obviously intended to cover any situation where a loss occurred when the property was not protected by the presence of someone in or upon the car . . . ." (*Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.* (1951) 235 Minn. 243, 251 [50 N.W.2d 629, 634] (*Ruvelson*).)

### A. *Rules Governing Interpretation of Insurance Policies*

■ As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' " (*Ibid.*)

■ A policy provision is ambiguous when it is susceptible to two or more reasonable constructions. (*Waller, supra,* 11 Cal.4th at p. 18.) Language in an insurance policy is "interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." (*Ibid.*) "The proper question is whether the [provision or] word is ambiguous in the context of *this* policy and the circumstances of *this* case. [Citation.] 'The provision will shift between clarity and ambiguity with changes in the event at hand.' [Citation.]" (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) Ambiguity " ' "is resolved by interpreting the ambiguous provisions in the sense the [insurer] believed the [insured] understood them at the time of formation. [Citation.] If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. [Citation.]" "This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' " '

[Citation.] 'Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.' " (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].)

■ Furthermore, policy exclusions are strictly construed (see e.g., *Waller, supra,* 11 Cal.4th at p. 16; *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205]), while exceptions to exclusions are broadly construed in favor of the insured (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1192 [77 Cal.Rptr.2d 537, 959 P.2d 1213]; *National Union Fire Ins. Co. v. Lynette C.* (1991) 228 Cal.App.3d 1073 [279 Cal.Rptr. 394]). " '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.] The exclusionary clause "must be *conspicuous, plain and clear*." ' [Citation.] This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." (*MacKinnon, supra,* at p. 648.)

B. *Interpretation of the Vehicle Theft Exclusion and Exception*

E.M.M.I. does not contend that Callahan, E.M.M.I.'s designated salesperson, was "in" the vehicle at the time of the theft, but instead argues that he was "upon" the vehicle. The controversy therefore centers on the meaning of the term "upon" as it is used in the exception to the vehicle theft exclusion. While the parties contend that the term "upon" is unambiguous as applied to the facts of this case, they disagree on how that term should be defined.

■ Preliminarily, we reject Zurich's contention that an ordinary and reasonable person would understand the phrase "actually in or upon" only in a legal sense or as a "legalism, used only for distinctly legal purposes." We reject this construction because it runs afoul of elementary rules of contract interpretation that policy language is interpreted in its ordinary and popular sense (*Waller, supra,* 11 Cal.4th at p. 18) and as a "layman would read it and not as it might be analyzed by an attorney or an insurance expert." (E.g., *Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129]; see Civ. Code, § 1638; *id.,* § 1644 ["words . . . are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning" unless used by the parties in that sense].) The policy at issue in this case defines certain words, such as "we" and "us" and further provides that "[o]ther words and phrases that appear in quotation marks have special meaning." Neither the phrase "actually in or upon" nor the term

"upon" is enclosed in quotation marks. Thus, nothing in the policy indicates or suggests that the exception to the vehicle theft exclusion is to be construed in a specialized or technical manner, or as Zurich contends—as used in statutes and ordinances. Absent evidence that the parties intended the provision to have a specialized meaning, we must reject Zurich's contention and construe the term in question as would a layperson.

E.M.M.I. contends the exception to the vehicle theft exclusion applies in this case because its salesman was in close proximity to the automobile when the theft occurred. It rests on the fact that the word "upon" is interchangeable with "on" and that the definition of "on" includes "in close proximity." (Merriam-Webster's 10th New Collegiate Dict. (1995) pp. 811, 1298 ["a village [on] the sea"]; Black's Law Dict. (6th ed. 1990) p. 1088 [defining "on" as "upon; as soon as; near to; along; along side of; adjacent to; contiguous to; at the time of; following upon; during; at or in contact with the upper surface of a thing"].) Zurich disagrees that close proximity is sufficient and implicitly relies on the definition of "on" "indicat[ing] means of conveyance" (Merriam-Webster's 10th New Collegiate Dict., *supra*, at p. 811; Random House College Dict. (rev. ed. 1980) p. 1444), such as "on a ship" or "on a train" and the definition of "upon" meaning "up and on; upward so as to get or be on" (Random House College Dict., *supra*, at p. 1444), such as "upon" a motorcycle.

■ Of course, the fact that a word carries multiple meanings does not by itself render it ambiguous. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., supra*, 5 Cal.4th at p. 868.) The context in which the word "upon" appears in this policy and under the circumstances of this case, however, renders its meaning ambiguous. Generally, one does not use the phrase "upon the vehicle" in ordinary usage, especially in the sense of "traveling upon the vehicle." Nor is the phrase "upon the vehicle" generally used to mean in close proximity to a vehicle, as E.M.M.I. contends. It is true that "upon" could refer to someone riding upon a motorcycle or the running board of an antique car, such as: "the salesman must be on or upon the motorcycle." Along this line the Court of Appeal observed that when the jeweler's block policy was conceived in the early 1900's, the word "on" or "upon" would have unambiguously applied to a horse or a horse-drawn carriage, and today, the same holds true with respect to motorcycles. But there is no indication that motorcycles are widely used by jewelry salespeople as a means of transporting jewelry; thus an insured would not reasonably expect that "upon" was intended to apply to motorcycles, as opposed to offering an alternative to the requirement that the insured actually be in the vehicle.[2] Moreover, the language in the policy does not clearly alert the insured to Zurich's restricted meaning, and it is improbable that a reasonable

---

[2] Justice Chin, in dissent, agrees with the Court of Appeal, and argues the words "on" and "upon," viewed from a "historical perspective" unambiguously referred to a "horse or

insured would interpret the language to apply to motorcycles, as opposed to automobiles. In short, neither definition squarely supports the parties' respective arguments. We therefore conclude the language in the vehicle theft exception is ambiguous.

Although the main culprit for this ambiguity is the use of the word "upon" to refer to a vehicle, the ambiguity is exacerbated by the use of the word "or." The exception to the vehicle theft exclusion is phrased in the disjunctive— "actually in *or* upon"—and therefore a reasonable insured would likely interpret the exception to mean that the insured must be either inside the vehicle, or in some other location relative to the vehicle. (See, e.g., *Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257] ["In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that' "].) Presented with such an alternative, we do not believe a reasonable insured would construe the exception to the vehicle theft exclusion to mean that the insured must be either inside or on top of the vehicle, or that the term "upon" applies solely to motorcycles. An insured using an automobile would not expect coverage to vanish when engaged in routine and necessary activity such as stepping out of the car to retrieve the jewelry from the backseat or trunk. Had the insurer intended the phrase "or upon" to apply solely to the use of motorcycles or other means of transportations such as ships and trains, it could, and should, have made this intention clear to the insured. The insurer could have, for example, defined the meaning of "upon" in the context of the policy language. This is a burden that rests squarely with Zurich, as the insurer. (*MacKinnon v. Truck Ins. Exchange, supra*, 31 Cal.4th at p. 648.)

Finding the vehicle theft exclusion and its exception ambiguous, we must resolve the ambiguity in favor of the insured, consistent with the insured's reasonable expectations. (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 879 [103 Cal.Rptr.2d 1, 15 P.3d 223].) As noted above, the jeweler's block policy at issue here provided broad coverage against loss of the insured jewelry. Given that broad coverage language, an insured would have a reasonable expectation that coverage would be provided in this context—when the insured is in close proximity to the vehicle and attending to it when the theft occurs. To construe the exception to the vehicle theft

---

horse-drawn carriage," when first used more than a century ago, to support his conclusion that in contemporary usage those words refer only to vehicles such as motorcycles. (Dis. opn. of Chin, J., *post*, at p. 489.) This historical meaning of the words used in a policy, however, does not illuminate the meaning of the policy language to a reasonable layperson in contemporary times who may well be unaware of this historical meaning. Even accepting that the words once unambiguously referred to horses and horse-drawn carriages, that clarity loses its luster when applied to "vehicles" in a modern insurance policy. That is, words that may once have been unambiguous, are not necessarily so when the context of their usage has changed. In interpreting policy language, we construe it as would a reasonable layperson, not an expert, attorney, or a historian. (*Crane v. State Farm & Cas. Co., supra*, 5 Cal.3d at p. 115.)

exclusion, and specifically the word "upon," as applying only to situations in which the insured is inside or physically touching the vehicle would upset the reasonable expectations of the insured. Such a narrow construction would unreasonably preclude coverage when the insured exits the vehicle and walks a short distance to retrieve the insured merchandise from either the backseat or the trunk of the vehicle, unless the salesperson keeps constant contact with the car while walking toward the rear of the vehicle.[3] The broad coverage language—providing coverage for all losses except those expressly excluded—along with the ambiguous language in the exclusionary provision, does not support this construction. (See *Star Diamond, supra,* 965 F.Supp. at p. 767 ["Such an interpretation would result in a denial of coverage for a loss occurring when the insured stepped out of his vehicle to open a rear door or the trunk of his car to retrieve the insured property."].)

Because the exclusionary clause as a whole is ambiguous, it cannot be said to be clear and plain in limiting coverage. (*MacKinnon v. Truck Ins. Exchange, supra,* 31 Cal.4th at p. 649.) In no way does the policy language alert a reasonable insured that coverage is lost by simply stepping outside of the vehicle. In such a case, the insured is in close proximity to the jewelry and is providing some protection against theft. That Zurich's position is counterintuitive to what a reasonable insured would expect is partly borne out by its response to a question posed at oral argument. In that response, Zurich maintained that an insured traveling by train would come within the exception to the vehicle theft exclusion if the insured left the jewelry in one compartment while he or she walked to a different compartment, such as the dining car, because such insured would be "upon" the train. Thus, according to Zurich, an insured who remains in close proximity to an automobile and is paying attention to it, providing a theft deterrent, would not be covered under the policy, but an insured traveling by train who leaves the jewelry completely unattended, thus providing no deterrence to theft, would be covered. This outcome cannot be said to be consistent with an insured's reasonable expectations.

Zurich further contends that the exception to the vehicle theft exclusion does not apply in the present case because the purpose of the exception is "to insure against theft by force or intimidation, but not by stealth." The Court of Appeal likewise observed: "As courts in other jurisdictions have explained, the purpose of the provision is to cover a loss by theft from a car in the presence of someone in or upon it, that is, theft by force or intimidation directed at those present, but not by stealth alone." We disagree. Nothing in the language of the policy suggests such limitation. Rather, reading the

---

[3] Zurich took the position at oral argument that when an automobile is involved, the insured must be inside the vehicle for the exception to the exclusionary provision to apply; simply touching the car would not be sufficient.

exclusionary clause and the exception in light of the broad coverage language (*MacKinnon v. Truck Ins. Exchange, supra*, 31 Cal.4th 635), it appears most reasonable to read the exclusion as applying when the vehicle and the insured jewelry were left unattended and, hence, more vulnerable to thievery. Given the high incidence and relative ease of car theft, it is reasonable that an insurer would exclude coverage for thefts from unattended vehicles. (See, e.g., *Ruvelson, supra*, 50 N.W.2d at p. 634 [exclusion "obviously intended to cover any situation where a loss occurred when the property was not protected by the presence of someone in or upon the car"].) Coverage for thefts from unattended vehicles might well command an increased premium. But if the insured is "in or upon" the vehicle when the theft occurs, the loss is covered whether or not the theft is accomplished by force or by stealth. A thief, for example, may stealthily break into the trunk of a car while the insured is sitting in the car. (See, e.g., *Sphere Drake Ins. PLC v. Trisko* (D.Minn. 1998) 24 F.Supp.2d 985, 989, affd. on other grounds (8th Cir. 2000) 226 F.3d 951, 955–956 [police detective describing situations where thieves, using special tools, were able to break into a vehicle's trunk unbeknownst to the vehicle's occupant].)

Our conclusion that the exception to the vehicle theft exclusion is not limited to thefts accomplished by force or intimidation is bolstered by the fact that the language in the exception uses the term "theft" as opposed to "robbery." Robbery requires the use of force or intimidation, while theft does not. (See, e.g., 2 Witkin and Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 94, p. 125 [explaining that for a robbery to occur, "[t]he property must be taken by either force (violence) or fear (intimidation)"]; *People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613] ["Theft is a lesser included offense of robbery; robbery has the additional element of a taking by force or fear"].) The common dictionary definition of these terms also supports this distinction. For instance, Merriam-Webster's 10th New Collegiate Dictionary, *supra*, at page 1222, defines theft as "the felonious taking and removing of personal property with intent to deprive the rightful owner of it," while robbery is defined as "larceny from the person or presence of another by violence or threat" (*id.* at p. 1013).

■ Significantly, the word "theft" is used both in the vehicle theft exclusion and its exception. Despite this, Zurich would have us find that the vehicle theft exclusion applies generally to all thefts from a vehicle, while the exception applies only to the greater crime of robbery. Accepting Zurich's interpretation would require that we give different meanings to the same term used in the same policy paragraph. This would run afoul of the rule of contract interpretation that the same word used in an instrument is generally given the same meaning unless the policy indicates otherwise. (See, e.g., *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1116–1117 [90 Cal.Rptr.2d 647, 988 P.2d 568]; *Victoria v. Superior Court* (1985) 40 Cal.3d

734, 741 [222 Cal.Rptr. 1, 710 P.2d 833]; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 526 [132 Cal.Rptr.2d 151].) Had Zurich intended the exception to apply only to situations involving force or intimidation, i.e., robbery, while the exclusion applied to theft, it should have used the more accurate term "robbery" to put the insured on notice. As written, a reasonable insured would not interpret the language as Zurich contends.

■ Construing the ambiguous language in favor of the insured, in a manner consistent with the insured's reasonable expectations, and keeping in mind that exclusionary provisions are narrowly interpreted while exceptions are broadly construed, we hold that the exception to the vehicle theft exclusion applies when an insured is in close proximity to the vehicle and is attending to it.

C. *Judicial Interpretations*

While this court has never had occasion to interpret the vehicle theft exclusion at issue here, numerous decisions, including two from this state, have interpreted or applied the same or similar language. Although the majority of these decisions denied coverage, as explained below, they do not compel a different outcome here.

Of the California cases, the most significant is *Revesz v. Excess Ins. Co.* (1973) 30 Cal.App.3d 125 [106 Cal.Rptr. 166] (*Revesz*). In that case, the Court of Appeal construed a "salesman's floater" policy with exclusion and exception provisions identical to those at issue in this case. There, the salesman, in need of driving directions, parked at a curb in front of a gas station, locked the ignition, got out, and took his keys with him as he walked around in front of the car toward a parkway. Thirty seconds after leaving his car and while he was still within two to three feet from it, the salesman heard the car door close and saw a thief drive away in his car, which contained his jewelry. The insured maintained that the term "upon" in the exception to the policy exclusion should be interpreted to mean " 'in or about' or 'in close proximity to' [the] vehicle while the insured is engaged in work incidental to loading, unloading or transporting jewelry. Such interpretation would provide coverage while the insured is walking to the rear of his car to remove jewelry, or while he is changing a tire, or while he momentarily leaves his vehicle to obtain directions, the situation presented in [that] case." (*Id.* at pp. 127–128.) The Court of Appeal found it unnecessary to decide whether the term "upon" should be interpreted as urged by the insured: "Having parked his vehicle at the curb, locked the ignition, removed his keys, and left the vehicle for the purpose of seeking information, he had *temporarily abandoned* the vehicle." (*Id.* at p. 129, italics added.) The exception to the exclusion therefore did not

apply. The court noted, however, "the word 'upon' might under some factual situations require interpretation" and that "[t]he controlling factors are not the time interval and the distance traveled but [the insured's] intent and conduct." (*Id.* at pp. 128–129; see also *Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103 [73 Cal.Rptr.2d 174] [no coverage for theft of jewelry from an unattended vehicle].)

The majority of cases from other jurisdictions similarly involve the temporary abandonment of the vehicle, and hence, the courts in those cases reached the same conclusion. In *Ruvelson, supra,* 50 N.W.2d 629, for instance, a jewelry salesman parked and locked his vehicle, crossed the street, and entered a hotel to purchase coffee. The salesman did not take the heavy jewelry with him into the hotel because " '[t]here were about six or eight steps to climb, and several doors to be opened, in order to enter the [hotel].' " (*Id.* at p. 631.) After returning to his vehicle two to four minutes later, the salesman found that his car window had been broken and the jewelry taken. (*Ibid.*) The Minnesota Supreme Court, in holding that the loss was not covered, concluded that the exception to the vehicle theft exclusion was "clear and unequivocal," requiring the insured to "be [a]ctually in or upon the automobile when the loss occurs." (*Id.* at p. 633, italics added; see also *Sphere Drake Ins. PLC v. Trisko, supra,* 24 F.Supp.2d 985 [applying Minnesota law].)

Conceding that the salesman was "temporarily absent" from the vehicle at the time of the theft (*Ruvelson, supra,* 50 N.W.2d at p. 631), the insured in *Ruvelson* argued that "upon" should be given a broad interpretation to include " 'in proximity to,' 'in the neighborhood of,' 'in the presence of,' or 'in the charge of.' " (*Id.* at p. 632.) The court rejected this interpretation, observing that courts "have uniformly construed this and similar language adversely to the contentions of [the insured]." (*Ibid.,* discussing *Greenberg v. Rhode Island Ins. Co.* (1946) 188 Misc. 23 [66 N.Y.S.2d 457, 459], in which the court concluded that the word "actually" in the exception "means that which exists in fact or reality, in contrast to that which is constructive, theoretical or speculative.")

In *Royce Furs, Inc. v. Home Insurance Co.* (1968) 30 A.D.2d 238 [291 N.Y.S.2d 529] (*Royce Furs*), a fur salesman parked and locked his vehicle and entered a hotel to register. The vehicle, which contained furs locked in the trunk, was parked six to 10 feet from the hotel entrance and was visible from inside the hotel through a large window. As the salesman returned to his vehicle, a man bolted into the car and drove off. (*Id.,* 291 N.Y.S.2d at p. 530.) The New York Supreme Court, Appellate Division denied coverage because the salesman was not "actually in or upon" the vehicle when the theft occurred, pointing out that the insured's "representative was not in the automobile, but

was far enough from it to have given the thief the opportunity to enter the car." (*Id.*, 291 N.Y.S.2d at p. 532.) Although noting that it would serve little purpose to discuss other cases applying similar policy language because "each case must be judged on its own factual situation," the court observed "that in almost every instance where similar clauses have been considered by the courts, coverage was denied where the automobile was not attended; or where the insured, or the employee, was not in or upon the car; or where there was no employee present whose sole duty was to attend such vehicle." (*Id.*, 291 N.Y.S.2d at p. 531; see also *Thomas Noe, Inc. v. Homestead Ins. Co.* (6th Cir. 1999) 173 F.3d 581 [insured inside house]; *Centennial Ins. Co. v. Schneider* (9th Cir. 1957) 247 F.2d 491 [car left unattended as salesman talked with client outside jewelry store and later inspected the interior of the client's new vehicle]; *Tivoli Corp. v. Jewelers Mut. Ins. Co.* (Tex.Ct.App. 1996) 932 S.W.2d 704 [salesman inside check-cashing business]; *Bliss Ring Co. v. Globe & Rutgers Fire Ins. Co.* (1955) 7 Ill.App.2d 523 [129 N.E.2d 784] [salesman left vehicle to visit coffee shop]; *Steinzeig v. Mechanics & Traders Ins. Co.* (Mo.Ct.App. 1957) 297 S.W.2d 778 [vehicle parked on street overnight]; *Cordova, Inc. v. Lloyd's Underwriters* (1996) 228 A.D.2d 179 [643 N.Y.S.2d 543] [employee paying gas station attendant]; *Wideband Jewelry Corp. v. Sun Ins. Co. of New York* (1994) 210 A.D.2d 220 [619 N.Y.S.2d 339] [salesman six feet from vehicle]; *Jerome I. Silverman, Inc. v. Lloyd's Underwriters* (S.D.N.Y. 1976) 422 F.Supp. 89 [immaterial that insured kept vehicle in sight]; *Seelig v. St. Paul Fire & Marine Ins. Co.* (E.D.N.Y. 1953) 109 F.Supp. 277 [vehicle left in parking garage]; *Greenberg v. Rhode Ins. Co.* (1946) 188 Misc. 23 [66 N.Y.S.2d 457] [insured inside restaurant]; *Equity Diamond Brokers, Inc. v. Transnational Ins. Co.* (2003) 151 Ohio.App.3d 747 [2003 Ohio 1024, 785 N.E.2d 816] [salesman inside restaurant]; *Princess Ring Co. v. Home Ins. Co.* (1932) 52 R.I. 481 [161 A. 292] [salesman 40 feet from vehicle].)

Similarly, in *American Stone Diamond, Inc. v. Lloyds of London* (S.D.Tex. 1996) 934 F.Supp. 839, the insured was transporting jewelry in the trunk of his automobile. He pulled into a gas station, refueled his vehicle, and went inside the station to pay. He returned to his vehicle within minutes to find the jewelry had been stolen from the trunk. The federal district court denied coverage, noting that the insured "was not literally, physically, in or upon the car at the time of the theft." (*Id.* at p. 842.) The court stated: "Courts have consistently held nearly identical policy language to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time. [Citations.]" (*Id.* at p. 843.)

In each of the above cases in which coverage was denied, the court held that the insured was not "in or upon" the vehicle because the insured or

designated employee had temporarily abandoned the vehicle when the theft occurred. However, in a case involving facts similar to those in the present case, coverage was found where the insured's representative, although not inside the vehicle or touching it, was in close proximity to the vehicle and attending to it when the theft occurred.

In *Star Diamond, supra,* 965 F.Supp. 763, the insured drove into a gas station and "[o]nce a pump was free, [he] parked his car, turned off the engine, exited his car and walked to the rear of the driver's side of his car where the pump was located. As he approached . . . the pump, he bumped into his car several times and . . . at no time was he more than nine inches from his car. When [the insured] reached the pump, he inserted a credit card into the pump several times in an attempt to authorize his purchase electronically. During this time, [the insured] had his back toward his car." (*Id.* at p. 764.) After repeated attempts to refuel, the insured returned to his car, three to five minutes after exiting the vehicle, and discovered that the bag containing the jewelry was missing.

The federal district court in *Star Diamond* held that coverage was not precluded under the vehicle theft exclusion, concluding that the plain meaning of the word "upon" as used in the exception to the exclusion encompassed " 'in or into close proximity or contact with.' " (*Star Diamond, supra,* 965 F.Supp. at p. 767, quoting Webster's 3d New Internat. Dict. (1981) p. 2518.) The court distinguished the cases discussed above in which coverage was denied, observing that "[i]n each of the foregoing cases, the insured had temporarily abandoned, walked away or diverted his attention from the vehicle . . . when the [theft] occurred. These cases differ from the facts of this case. Here, the insured remained inches from his vehicle after he exited and was attending to his vehicle at the time the loss occurred." (*Star Diamond, supra,* at p. 767.)

The court further found that the plain meaning of the exception to the vehicle theft exclusion did not support the insurer's contention that the insured had to physically be in the vehicle when the theft occurred in order for the exception to come into force, explaining that "this interpretation ignores the applicability of the term 'upon' altogether." (*Star Diamond, supra,* 965 F.Supp. at p. 767.) Rejecting the insurer's suggestion that "upon" was meant to apply to situations involving motorcycles, the court stated: "By implication . . . [the insurer] contends that the term 'upon' does not apply wherever it is physically possible for the insured to be 'in' the vehicle with the insured property.[4] However, the use of the disjunctive 'or' between the

---

[4] Zurich makes a similar argument. It contends that the phrase "actually in or upon" is ordinarily understood to "encompass the occupancy of vehicles in every way[]" which includes

terms 'in' and 'upon' results in both terms modifying vehicle. If [the insurer] wished to condition coverage on the requirement that the insured be 'actually in' the vehicle at the time of the loss, it could easily have drafted the exception to achieve this result." (*Ibid.*) The court found "that the term 'upon' encompasses situations where the insured is actually attending to his vehicle to facilitate the transport of insured property [and] should thus include instances where the insured exits his vehicle to tend to the insured property in the back seat or trunk, change a tire or refuel his vehicle, and is physically adjacent to and attending to the vehicle." (*Ibid.*; accord, *Lackow v. Ins. Co. of North America* (1976) 52 A.D.2d 579 [382 N.Y.S.2d 529] [exception applied when insured's employee was at the rear of the vehicle opening the trunk at the time of the theft].)[5]

Zurich calls into question the *Star Diamond* decision because, according to Zurich, the court incorrectly distinguished *Royce Furs, supra*, 291 N.Y.S.2d 529, and *Wideband Jewelry Corp. v. Sun Ins. Co. of New York, supra*, 619 N.Y.S.2d 339 (*Wideband*), which held the exception inapplicable. Zurich places great reliance on the fact that the theft in *Royce Furs* occurred while the insured's representative was walking back to his vehicle from the hotel at which he had just registered, and hence his attention was no longer diverted. We find no significance in this fact. The exception became inapplicable and the vehicle theft exclusion operable once the insured's representative temporarily abandoned the vehicle by leaving it and entering the hotel. By so abandoning the vehicle, the insured's representative invited the sort of mischief from which the insurer sought to insulate itself—theft of the insured jewelry resulting from the abandonment of the vehicle.

Zurich similarly contends that the *Star Diamond* court incorrectly distinguished *Wideband, supra*, 619 N.Y.S.2d 339. In a short, single-paragraph discussion, the *Wideband* court held that the exception did not apply because the insured's employee was "approximately six feet away from his vehicle when the thieves opened the trunk and stole" the jewelry. (*Ibid.*) While Zurich is correct that the facts recited do not facially indicate that the insured's employee had abandoned, walked away, or diverted his attention from the vehicle, the fact that the insured's employee was six feet away, and apparently unaware that thieves were breaking into the trunk of his vehicle, permits the inference that the employee had temporarily abandoned the

---

"possibility by travel by means of the interior of vehicles without interiors" or the posibility of travel by means of the exterior of vehicles without interiors" such as a bicycle.

[5] This case presents a stronger case for coverage under the exception to the vehicle exclusion. Unlike the insured in *Star Diamond*, the salesman here never turned his back on the vehicle, but had it in sight the entire time he was outside. Also, unlike the insured in *Star Diamond*, the salesman here actually saw the thief enter the car and drive away with it and the jewelry. The insured in *Star Diamond* was unaware the jewelry had been stolen until he returned to the vehicle.

vehicle. In any case, given *Wideband*'s very limited discussion, it does not cast doubt upon the holding in *Star Diamond.*

Our holding that the insured in the present case was "upon" the vehicle when the theft occurred is consistent with the cases discussed above in which coverage was denied under the vehicle theft exclusion. In none of the cases in which the court found the exception to the vehicle theft exclusion inapplicable and denied coverage was the insured or its representative similarly "upon" the vehicle. The insureds in those cases were not in close proximity and actually attending to the vehicle when the theft occurred. Nonetheless, they claimed coverage under the exception to the vehicle theft exclusion by advocating an interpretation of "upon" that was inconsistent with the language and purpose of the policy exclusion. The insured in *Ruvelson, supra,* 50 N.W.2d at page 631, for example, contended that the exception applied, despite acknowledging the salesman was "temporarily absent" from the vehicle when the theft occurred. The insured urged that the term "upon" included, inter alia, the definition of "in the neighborhood of." (*Id.,* at p. 632.) To accept that definition and allow coverage in that situation, however, would render meaningless the terms in the vehicle theft exclusion and its exception. Similarly, in *Revesz* the insured maintained that "upon" meant " 'in close proximity to' " his vehicle and applied when the "insured [was] walking to the rear of his car to remove jewelry, or while he is changing a tire, *or while he momentarily [left] his vehicle to obtain directions,* the situation presented in [that] case." (*Revesz, supra,* 30 Cal.App.3d at pp. 127–128.) While the first two situations would arguably come within the meaning of "upon" and hence the exception, the latter situation would not because in such a situation the insured has abandoned the vehicle, thus leaving it and the insured jewelry vulnerable to theft.

In response to these and similar contentions, some courts have used broad language that would appear to bar recovery whenever the insured was outside the vehicle at the time of the theft. (See, e.g., *Ruvelson, supra,* 50 N.W.2d at p. 631 [noting that courts have uniformly rejected the insured's contention that "upon" means "in proximity" and similar meanings]; *American Stone Diamond v. Lloyd's of London, supra,* 934 F.Supp. at p. 843 ["Courts have consistently . . . denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time"]; accord, *Equity Diamond Brokers, Inc. v. Transnational Ins. Co., supra,* 151 Ohio.App.3d at p. 752; *Cordova, Inc. v. Lloyd's Underwriters, supra,* 643 N.Y.S.2d 534 [exception "has consistently been given a literal construction rejecting various theories of constructive possession of the vehicle"].) However, as explained above, the insureds in those cases were advocating a very broad interpretation of the term "upon" that would encompass their act of abandoning the vehicle.

But because the insureds or the insureds' salespersons had temporarily abandoned their vehicles in those cases, they were not "upon" their vehicles as required by the exception to the vehicle theft exclusion; those courts therefore were not called upon to decide whether the exception would apply in the circumstances presented in the present case. In our view, those courts fashioned a rule that was broader than necessary, given the specific factual circumstances they confronted, namely, the temporary abandonment of the vehicle. (See, e.g., *Revesz, supra,* 30 Cal.App.3d at pp. 128–129 [declining to interpret the term "upon" since the insured had temporarily abandoned the vehicle and was therefore in no sense "upon" it].) To the extent these cases may be construed to deny coverage in all cases in which the insured was outside the vehicle at the time of the theft, irrespective of the insured's distance from the vehicle and the insured's conduct, we disagree.

Finally, Zurich agrees with the *Revesz* court that an insured's intent and conduct must be considered in determining the applicability of the exception to the vehicle theft exclusion. Zurich contends that the facts of *Revesz* and this case are substantially similar and that E.M.M.I.'s salesman manifested the same intent and conduct to temporarily abandon his vehicle, as did the insured in *Revesz,* when he locked the ignition and left his vehicle to seek directions. We disagree.

In *Revesz,* the insured intended to and did abandon his vehicle as he walked away from it in search of directions. With his back to the car, he was not only unable to observe his car, but apparently did not realize that someone was breaking into it despite the fact the door was locked and the insured was only two to three feet from the car. (*Revesz, supra,* 30 Cal. App. 3d at p. 126.) Unlike the insured in *Revesz,* the salesman here did not intend to and did not abandon his vehicle when he walked to the rear to inspect the tailpipe area. His intent and conduct was solely to attend to his vehicle without abandoning it or the jewelry locked in the trunk.

For the reasons above, we conclude that the vehicle theft exclusion is ambiguous and did not clearly and plainly apprise the insured that coverage would be lost by merely stepping out of the car. Construing the exception in the insured's favor, we hold that E.M.M.I.'s salesman, who was approximately two feet from and actually attending to his vehicle when the theft occurred, came within the scope of the exception to the vehicle theft exclusion.[6]

---

[6] E.M.M.I. also contends that the phrase "at the time of theft" found in the exception to the vehicle theft exclusion "describes a period of time starting with the commencement of a theft and ending with the culmination of the theft." Our holding above makes its unnecessary for us to address this alternative argument.

## III.  Disposition

Accordingly, we reverse the judgment of the Court of Appeal affirming summary judgment in favor of Zurich.

George, C. J., Baxter, J., and Werdegar, J., concurred.

**KENNARD, J.**, Dissenting.—The majority holds that the words "actually in or upon" a vehicle in a "jeweler's block" insurance policy means in close proximity to a vehicle, not actually in it or on it. (Maj. opn., *ante,* at p. 476.) I disagree. The majority's holding misreads the plain meaning of the language, and is contrary to the holdings of the overwhelming majority of courts in other jurisdictions. We should enforce the contract between the parties as it is written, not rewrite its terms.

### I

Plaintiff E.M.M.I, Inc., doing business as Universal Fine Jewelry, sells jewelry. Its salesman, Brian Callahan, was carrying jewelry in his car. When Callahan heard a "clunking" noise coming from the car, he pulled the car over, got out of the car while leaving its engine running, went to the back of the car and bent over to look under the car. A thief ran by him, got into the car, and drove away.

Defendant Zurich American Insurance Company (Zurich) insured E.M.M.I. under a "jeweler's block" policy. The policy excludes from coverage any loss from a vehicle unless an employee is "actually in or upon such vehicle at the time of the theft." E.M.M.I. brought this action against Zurich to recover for the loss under the policy. The trial court granted Zurich's motion for summary judgment because "there unequivocally is no coverage under terms requiring the insured to be in or upon the vehicle at the time of the theft." The Court of Appeal, after reviewing the policy and applicable law in depth, affirmed, holding that the words "actually in or upon" do not mean close proximity. The majority reverses the Court of Appeal. I would affirm its decision.

### II

The applicable law is well established and clear. The ordinary rules of contract interpretation apply to the construction of an insurance policy. (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 762–763 [110 Cal.Rptr.2d 844, 28 P.3d 889]; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Judicial interpretation is controlled by words, as they are understood in their ordinary and

popular sense. (Civ. Code, § 1644; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) The function of the court in interpreting an instrument "is simply to ascertain and declare what is in its terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; *Safeco Ins. Co. v. Robert S., supra,* at p. 764; *Jensen v. Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 790 [345 P.2d 1].) Language cannot be found to be ambiguous in the abstract and courts are "not to strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc., supra,* at pp. 18–19.)

The ordinary, common, and popular understanding of the words "actually upon" mean in fact on a vehicle. Here, Presiding Justice Turner, writing for a unanimous Court of Appeal panel, put it thus: "[T]he provision in question is unambiguous. In its ordinary and popular usage (Civ. Code, § 1644; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1265), 'upon' is interchangeable with 'on.' (E.g., Newbury House Online Dict. (1999) <http://nhd.heinle.com/nhd-bin/searchNHD.pl> [as of July 22, 2002]; Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 1298; Webster's New World Dict. (3d college ed. 1991) p. 1466; Oxford English Dict. Online (2d ed. 1989) <http://dictionary.oed.com> [as of July 22, 2002], ['upon,' *prep.*]; American Heritage Dict. (2d college ed. 1985) p. 1328.) Webster's New World Dictionary, *supra,* at page 1466 defines 'upon' as follows, '[O]n (in various senses), or up and on: *on* and *upon* are generally interchangeable, the choice being governed by idiom, sentence rhythm, etc.' 'On' *can* mean 'in close proximity with,' as in 'a village [*on*] the sea,' or 'stay [*on*] your opponent.' (Merriam-Webster's Collegiate Dict., *supra,* p. 811.) 'Upon' can also mean 'in or into close proximity or contact with' as in 'the enemy is [*upon*] us,' or 'despondency fell [*upon*] me.' (Webster's 3d New Internat. Dict. (1981) p. 2517.) But we have not found any definition of 'on' or 'upon' that includes in close proximity *to a car.* (See Webster's 3d New Internat. Dict., *supra,* p. 1574 ['on' is 'used as a function word to indicate presence within,' as in 'rode there [*on*] a train,' or 'booked passage [*on*] an ocean liner'].)"

No one would understand the statement that "a person is on a car" to mean that the person was standing next to the car or two feet away from it. There simply is no room in this context to refuse to recognize and give meaning to the ordinary and common understanding and usage of the words. The language is clear. The use of the word "actually" in the phrase "actually in or upon" makes what is already clear unquestionable. As numerous courts have already recognized, the word "actually" in the phrase "clearly negates constructive presence and possession. (See *Royce Furs, Inc.* v. *Home Insurance Company* (1968) 30 App.Div.2d 238 [291 N.Y.S.2d 529, 530–531]; *Phil G. Ruvelson, Inc.* v. *St. Paul Fire & Marine Ins. Co.* (1951) 235 Minn.

243 [50 N.W.2d 629, 633]; *Greenberg* v. *Rhode Island Ins. Co.* (1946) 188 Misc. 23 [66 N.Y.S.2d 457, 459].)" (*Revesz v. Excess Ins. Co.* (1973) 30 Cal.App.3d 125, 129 [106 Cal.Rptr. 166].)

Not surprisingly, the overwhelming majority of courts that have addressed this policy provision have also found it clear and unambiguous. Recently, in *American Stone Diamond, Inc. v. Lloyds of London* (S.D.Tex. 1996) 934 F.Supp. 839, 843, the court summarized and cited some of these decisions. "Courts have consistently held nearly identical policy language ['actually in or upon'] to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time. See, e.g., *Williams v. Fallaize Ins. Agency, Inc.,* 220 Ga.App. 411 [469 S.E.2d 752] (1996) (exclusion applicable where insured was in store 25 feet from vehicle at time of theft); *Wideband Jewelry Corp. v. Sun Ins. Co. of N.Y.,* 210 A.D.2d 220 [619 N.Y.S.2d 339] (1994) (exclusion applicable where insured's employee was six feet from vehicle at time of theft); *Jerome I. Silverman, Inc. v. Lloyd's Underwriters,* 422 F.Supp. 89 (S.D.N.Y. 1976) (exclusion applicable where insured was temporarily away from vehicle at time of theft); *Revesz v. Excess Ins. Co.,* 30 Cal.App.3d 125 [106 Cal.Rptr. 166] (1973) (exclusion applicable where insured was getting directions a few feet from vehicle at time of theft); *Royce Furs, Inc. v. Home Ins. Co.,* 30 A.D.2d 238 [291 N.Y.S.2d 529] (1968) (exclusion applicable where insured was registering inside hotel for a few minutes while vehicle was six to 10 feet outside hotel at time of theft); *American Charm Corp. v. St. Paul Fire & Marine Ins. Co.,* 56 Misc.2d 574 [289 N.Y.S.2d 383] (1968) (exclusion applicable where insured was in his home with vehicle locked in adjacent garage at time of theft); *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.,* 235 Minn. 243 [50 N.W.2d 629] (1951) (exclusion applicable where insured was away from vehicle for a few minutes to use bathroom and drink cup of coffee at time of theft). See especially *JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co.,* 109 Md.App. 343 [674 A.2d 562] (1996) (exclusion applicable where insured was inside service station paying for gasoline at time of theft)." (See also Annot., Construction and Effect of "Jeweler's Block" Policies or Provisions Contained Therein (1994) 22 A.L.R.5th 579, § 2.)

The words "actually in or upon" are clear and unequivocal. It is not for this court to rewrite the parties' contract by construing language to mean something it does not mean.

Accordingly, I dissent.

**CHIN, J.**—I respectfully dissent, for I cannot agree with the majority's insurance coverage interpretation. The insurance policy at issue excludes from coverage jewelry stolen from a vehicle unless the insured was " *'actually in or upon such vehicle at the time of the theft.'* " (Maj. opn., *ante*, at p. 468, italics added.) The italicized language is unambiguous. It does not, as the majority insists, contemplate coverage when the insured or its representative is "in close proximity" to the vehicle or somewhere nearby at the time of the theft. Rather, the insurer's use of the phrase *"actually in or upon such vehicle"* was deliberate. Jewelry invites theft. Jewelry in unattended vehicles especially invites theft. The intent of the exclusion of theft when the insured is not actually, literally, in or upon the car, is to ensure the actual presence of someone in or upon the car in order to avoid a theft. (*Ruvelson, Inc. v. St. Paul Fire and Marine Ins. Co.* (1951) 235 Minn. 243 [50 N.W.2d 629, 635] (*Ruvelson*).) Conversely, the *absence* of an actual presence in or upon the unoccupied vehicle offers the criminal the opportunity to steal. (*Ibid.*) Zurich did not insure against theft when the insured's representative was nearby or close to the car, but only when he was *actually* in or upon the vehicle. Therefore, when Brian Callahan, who was in charge of the car containing the jewelry, exited the vehicle and left the engine running, he increased the risk of theft of the car and anything in it, including the jewelry. Under the insurance policy's plain language, and the many interpretative principles that guide us in reviewing insurance coverage issues, the theft is excluded from coverage.

Jeweler's block insurance was conceived by Lloyds of London at the turn of the previous century. (*JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co.* (1997) 345 Md. 630 [693 A.2d 832, fn.1].) The "all risk" insurance is different from other property or "named peril" insurance because the policy insures all risks of loss or damage to the jewelry subject to certain exclusions. The policy contains an exclusion for all jewelry theft as follows: "We will not pay for 'loss' caused by or resulting from any of the following: [¶] . . . Theft from any vehicle unless you, an employee, or other person whose sole duty is to attend the vehicle are actually in or upon such vehicle at the time of the theft." The exclusion and exception for thefts that occur when the employee is "actually in or upon [the insured's] vehicle" has long been included in the policy. Although exceptions to exclusions are construed broadly in the insured's favor, courts will not strain to create an ambiguity where none exists and unambiguous policy language controls. (*Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

Two California cases have considered a similar issue under comparable jeweler's block policies. In *Revesz v. Excess Ins. Co.* (1973) 30 Cal.App.3d 125 [106 Cal.Rptr. 166] (*Revesz*) and *Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103 [73 Cal.Rptr.2d 174] (*Nissel*), the Courts of Appeal denied coverage for the theft of jewelry from a car

because the subject vehicles containing the jewelry were parked and left unattended. In both cases, the courts found the "actually in or upon the vehicle" requirement unambiguous and concluded the drivers intended to abandon their vehicles temporarily either to get directions or engage in other business. The majority attempts to distinguish these cases on the ground that Callahan did not intend to abandon the vehicle or turn his attention away from it. Instead, he wanted to inspect it in order to determine the origin of a rattling noise, and had to exit the vehicle in order to conduct his inspection.

The majority places much emphasis on the fact that the court in *Revesz, supra,* 30 Cal.App.3d at pages 128–129, looked to the insured's intent and conduct in determining whether the theft that occurred was after the insured salesman stopped to ask for directions. *Revesz* found that by parking his car at the curb, locking the ignition, removing the keys, and leaving the vehicle to seek information, he had temporarily abandoned it. (*Ibid.*) In direct contrast to the majority, however, *Revesz* concluded that the requirement that the insured or its representative remain "actually in or upon the vehicle" was not ambiguous, and placed great emphasis on the word "actually" to find no coverage. (*Ibid.*) Indeed, *Revesz* specifically observed that temporary abandonment of the insured jewelry can occur when the employee is "not actually in or upon his vehicle" and "the thief is able to take possession of the vehicle and its contents without interference from him." (*Ibid.*) Thus, although *Revesz* stated that the insured's intent was relevant, it relied solely on the clear and explicit words of the policy, and not the insured's intent, in finding no coverage.

*Nissel, supra,* 62 Cal.App.4th at page 1103, is also instructive. There, two thieves stole a bag containing diamonds and other items from the salesman's vehicle. (*Id.* at p. 1106.) Similar to the policy at issue here, the jeweler's block policy in *Nissel* excluded thefts from an automobile unless the insured (or its permanent employee) at the time of the loss was "actually in or upon such vehicle." (*Id.* at p. 1107.) Although the insured made no claim that the policy exclusion was unclear or ambiguous, the court held that because the employee was not actually in or upon the vehicle when the theft occurred, the exclusion barred coverage. (*Id.* at p. 1114; see also *Taff v. Atlas Assur. Co.* (1943) 58 Cal.App.2d 696, 701 [137 P.2d 483] ["If he should not leave his jewelry in his unguarded car exposed to the hazards of theft, . . . his coverage was complete; but he did choose so to leave it, he had got what he bought"].)

The majority of other state courts agree that the insured or its employee must actually, literally, be in or on the vehicle in order for the exception to apply. (See, e.g., *American Stone Diamond, Inc. v. Lloyds of London* (S.D.Tex. 1996) 934 F.Supp. 839, 843–844; see also *Sphere Drake Ins. PLC v. Trisko* (D.Minn. 1998) 24 F.Supp.2d 985, 992–996; *Wideband Jewelry*

*Corp. v. Sun Ins. Co. of New York, Inc.* (1994) 210 A.D.2d 220 [619 N.Y.S.2d 339] [no coverage when employee six feet away from vehicle when theft occurred]; *Greenberg v. Rhode Island Ins. Co.* (1946) 188 Misc. 23 [66 N.Y.S.2d 457, 459] *(Greenberg)* [car parked on street while representative ate in restaurant].) As *American Stone Diamond* observed, "[c]ourts have consistently held nearly identical policy language to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time." *(American Stone Diamond, supra,* 934 F.Supp. at p. 843.) Even *Revesz* relied on the majority of state cases that place "great emphasis on the word 'actually,' indicating that it clearly negates constructive presence and possession." *(Revesz, supra,* 30 Cal.App.3d at p. 129.)

The cases the majority relies on for support generally stand alone in their conclusion that the requirement that the insured or its representative be "actually in or upon such vehicle at the time of the theft" includes close proximity to the vehicle. *(Lackow v. Insurance Co. of North America* (1976) 52 A.D.2d 579 [382 N.Y.S.2d 529]; *Star Diamond v. Underwriters at Lloyd's, London* (E.D.Va. 1997) 965 F.Supp. 763, 765.) Indeed as the Court of Appeal noted, neither of these cases has been followed in any other jurisdiction. In *Lackow,* the court found coverage under a similar policy when the insured's employee was at the rear of the vehicle opening its trunk at the time of the theft. The court interpreted the "actually in or upon such vehicle" at the time of the loss to include coverage when the insured was close enough to the vehicle "to be able to observe a theft of the contents." *(Lackow, supra,* 52 A.D. at p. 579.) In *Star Diamond,* the company president placed his knapsack full of diamonds on the floor behind the front seat of his car. After he stopped at a gas station, and when he was not more than nine inches from his car, the knapsack was stolen. *(Star Diamond, supra,* 965 F.Supp. at p. 764.) The policy excluded theft of the jewelry unless the insured was "in or upon the vehicle at the time of the loss." *(Id.* at p. 765.) The court disregarded the policy's clear meaning and broadened coverage beyond the policy's scope to hold that the use of the disjunctive "or" between the words "in" or "upon" meant coverage was not conditioned solely on the insured being "actually in" the vehicle. In addition, the court concluded that the term "upon" should allow coverage when the insured exits the car to attend to the vehicle. *(Id.* at p. 767.) Under the clear and explicit policy language, this conclusion is questionable. As noted, no other jurisdiction has followed the case, even though our majority plans to do so.

Standard dictionary definitions also undermine the majority's strained approach to insurance policy interpretation. As the Court of Appeal observed,

"upon" is interchangeable with the word "on." (See, e.g., Webster's Collegiate Dict. (10th ed. 1995) p. 1298.) Whereas "on" can mean "in close proximity with," as in "a village *on* the sea" or as a function word to mean "presence within," as in "rode on a train" there is no definition of "on" or "upon" that includes in close proximity *to a car.* The majority's hypothetical, in response to a comment made during oral argument involving an insured who carelessly leaves jewelry in one train compartment while walking to a different compartment, strains the policy's application and ignores the standard rules of word usage and function.

In addition, as the Court of Appeal also noted, if we view the terms "on" or "upon" from a historical perspective, those words "logically and unambiguously apply to a horse or a horse-drawn carriage. One would be upon rather than in a horse or carriage. In modern times, the words 'on' or 'upon' would apply to a motorcycle. In the ordinary sense of the words, whether one is 'on' or 'upon' a vehicle means the same thing; the usage varies with the object."

The majority of courts agree that the insurer's use of the word "actually" is also quite significant. Indeed, the courts adopting the majority view would agree that placing the word "actually" in the beginning of the policy's exception to the exclusion to theft "belies any argument that the exclusion can be avoided when the insured is in close proximity to the car or is watching it." In *Greenberg, supra,* 66 N.Y.S.2d at page 459, the court pointed out that, "Actual means that which exists in fact or reality, in contrast to that which is constructive, theoretical or speculative. [Citation.] [¶] We must give due recognition to the use of the word 'actually' and must conclude it was inserted and intended for a definite purpose—to indicate the intention that presence in reality presence in fact was required and not a constructive or theoretical one."

The majority also cites many rules of insurance policy interpretation to support its holding. They all favor the view that there is no coverage here. For example, the majority relies on the rule that an insurance policy is considered ambiguous only when it is susceptible to two or more constructions. (*Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th at p. 18.) The phrase interpreted here, "actually in or upon such vehicle at the time of the theft," is capable of one meaning only: The insured must be in or upon the vehicle when the theft occurs in order for coverage to apply. The rule is clearly stated by several courts that "[t]he [exclusion] was obviously intended to cover any situation where a loss occurred when the property was not protected by the presence of someone in or upon the car." (*Ruvelson, supra,* 50 N.W.2d at p. 634; maj. opn., *ante,* at p. 470.)

The majority also acknowledges, but refuses to follow, the statutory mandate to interpret written contract terms under their "clear and explicit"

meaning, and in their "ordinary and popular sense." (Civ. Code, §§ 1644, 1638.) Under these rules, we must find that the jeweler's block theft policy requirement that the insured party remain "actually in or upon the vehicle at the time of such theft" to mean what it says. There is no ambiguity here. To hold otherwise ignores the obvious intent of the specific and limited exception to the exclusion for theft, and potentially risks increased premiums for jewelry theft protection, a risk I cannot concede.

According to the clear and explicit words used in the jeweler's block policy before us, the insurer reasonably decided that actual presence of the insured or its representative in the car would likely deter a thief, while the absence of an actual presence offers the thief an opportunity to steal. As one court noted, "opportunity makes the thief. If [the insured] had been in the automobile, probably the thief would not have entered." (*Princess Ring Co. v. Home Ins. Co.* (1932) 52 R.I. 481 [161 A. 292, 293].) Long ago, insurance companies decided to insure against the theft of jewelry in vehicles only if the insured or its representative took basic precautions to guard against the theft. When the insured or its representative leaves the car for any reason, the risk of theft increases. That is what happened here. When Callahan left the car, with its engine running, to inspect a potential problem, he was not "actually in or upon such vehicle at the time of the theft" as the exception to the theft exclusion requires. He left the vehicle and its contents exposed to theft. The policy's clear language excludes this theft from its coverage.

Brown, J., concurred.

Respondent's petition for a rehearing was denied April 28, 2004. Kennard, J., Chin, J., and Brown, J., were of the opinion that the petition should be granted.