NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FEB 15 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ATTORNEYS INSURANCE MUTUAL
RISK RETENTION GROUP, INC.,

Plaintiff-Appellee,

v.

LIBERTY SURPLUS INSURANCE
CORPORATION,

Defendant-Appellant.

No.   17-55597

D.C. No.
2:15-cv-04756-FMO-JC

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Submitted February 7, 2019**
Pasadena, California

Before:  WARDLAW and BEA, Circuit Judges, and MURPHY,*** District Judge.

---

*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

***     The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

During both the 2009–2010 and 2010–2011 insurance policy periods, attorney J. Wayne Allen ("Allen") was insured through his employer by Appellant Liberty Surplus Insurance Corporation's ("Liberty") professional liability insurance. Third parties filed suit against Allen on February 1, 2010 (during the 2009–2010 policy period) in a probate case and again on September 24, 2010 (during the 2010–2011 policy period) in a related civil action. Liberty declined coverage for Allen in the civil action. Appellee Attorneys Insurance Mutual Risk Retention Group, Inc. ("AIMRRG"), which had been defending Allen with a reservation of rights, sued Liberty for contribution of defense costs. The district court entered summary judgment for AIMRRG against Liberty. Liberty appeals the decision, challenging the district court's conclusion that the "Multiple Insureds, Claims, and Claimants" paragraph of Liberty's 2010–2011 policy ("2010–2011 Policy") did not disclaim Liberty's obligation to contribute to the costs of defending Allen in the civil action. We agree with the district court's conclusion and therefore affirm.

Liberty's argument involves interpretation of one of the 2010–2011 Policy's defined terms, "Policy Period." The 2010–2011 Policy is "a claims-made and reported policy," which requires that any claim made during the 2010–2011 policy period against the insured be reported during the 2010–2011 policy period. One

2

provision limits Liberty's liability for multiple related claims and states, in relevant part:

> **Claims** alleging, based upon, arising out of or attributable to the same or related acts, errors or omissions shall be treated as a single **Claim** regardless of whether made against one or more than one Insured. All such **Claims**, whenever made, shall be considered first made during the **Policy Period** or any Extended Reporting Period in which the earliest **Claim** arising out of such acts, errors or omissions was first made, and all such **Claims** shall be subject to the same Limits of Liability.

The 2010–2011 Policy defines "Policy Period" as "the period from the Inception Date of this Policy to the Policy Expiration Date as set forth in the Declarations or its earlier termination date, if any." The "Declarations" identify the policy period as from July 31, 2010 until July 31, 2011.

Liberty argues that the 2010–2011 Policy thus limits coverage so that if multiple claims regarding the same set of facts are made against an insured in multiple policy periods, the claims are all considered initially made during the policy period in which the first claim is made. Because claims must be reported during the policy period in which they are made, Liberty insists that it has no obligation to defend Allen against the civil action because he failed to report the related probate claim during the 2009–2010 policy period. As the district court correctly concluded, however, Liberty's definition of "Policy Period" within the policy precludes this interpretation.

3

As the district court correctly noted, "[a]dopting Liberty's interpretation would require the court to give different meanings to the same term used in the same policy, which would run afoul of the rules of contract interpretation." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 393 (Cal. 2004). Rather, the definition of "Policy Period" necessitates that the "Multiple Insureds, Claims and Claimants" provision be read to mean any relevant claims will be "considered first made during the Policy Period," *i.e.*, during the period from July 31, 2010 until July 31, 2011. *See* Cal. Civ. Code § 1644 (noting that if parties give a term a special meaning, courts must follow the special meaning). Although Liberty's chosen definition of "Policy Period" may create an ambiguity in the meaning of the multiple related claims provision as a whole, the district court did not err because ambiguities in an insurance policy are resolved against the insurer.[1] *See Harris v. Glens Falls Ins. Co.*, 493 P.2d 861, 862 (Cal. 1972) (in bank) (applying the "settled rule that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and that if semantically permissible, the contract will be given

---

[1] Before resolving ambiguities against the insurer, California courts interpret uncertainties or ambiguities "in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. But here, the parties do not argue or explain what Liberty believed that Allen understood the Single Claim Provision to mean. We therefore proceed to the final step of contract interpretation and interpret the uncertainty "most strongly against" Liberty as "the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.").

**AFFIRMED.**