Filed 11/12/24  Jasper v. Chubb National Ins. Co. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARL JASPER et al., | H050804 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 20CV364121) |
| v. | |
| CHUBB NATIONAL INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

In this insurance coverage action, we are called upon to determine whether a directors and officers liability policy issued by Federal Insurance Company covers an insured's claim for legal defense costs. Maxim Integrated Products, Inc. and its former chief financial officer, Carl Jasper, sued Federal for breaching the policy in bad faith. Federal denied coverage, arguing Jasper's claim is the substantial equivalent of "restitutionary damages" excluded from the policy's definition of "Loss." Federal also asserted coverage is prohibited by Insurance Code section 533, which codifies California's public policy against insuring criminal and fraudulent conduct. The trial court agreed and granted summary judgment for defendants. Plaintiffs contend the trial court misinterpreted the policy and misconstrued the statute as prohibiting plaintiffs' claim. For the reasons explained here, we will reverse the judgment as to Federal, but affirm as to Chubb National Insurance Company.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following summary is taken from the parties' Joint Statement of Stipulated Facts.  Carl Jasper was Maxim's chief financial officer until 2007.  An indemnification agreement between Jasper and Maxim had required Maxim to indemnify Jasper and advance his legal defense costs for any action brought against him in his capacity as a corporate officer.  The agreement expressly characterized any expenses advanced by Maxim as an undertaking, which Jasper agreed to repay if it were determined he was not entitled to indemnification.

Jasper was also covered by both a Broad Form Individual Non-Indemnifiable Loss Directors and Officers Liability Insurance Policy Maxim purchased from Arch Insurance Company, and an Excess Liability Policy from Federal providing an additional $15 million in coverage.  The Federal Policy is a " 'follow form' " policy incorporating the language of the Arch Policy as to provisions relevant to this appeal.

The Securities and Exchange Commission filed a civil enforcement action against Jasper in 2007 for violations of the Securities and Exchange Act relating to stock option backdating and for several years of inaccurate regulatory filings.  A jury found Jasper liable for fraudulent conduct, securities fraud and making knowingly false statements and certifications to the Commission.  Jasper unsuccessfully appealed the judgment to the United States Court of Appeals for the Ninth Circuit.  (*SEC v. Jasper* (9th Cir. 2012) 678 F.3d 1116, cert. den. (2013) 568 U.S. 1212.)

Maxim shareholders filed derivative actions in California and Delaware.  Maxim, Jasper and their insurance companies settled the derivative actions.  Arch agreed to pay its full $15 million policy limit and Federal agreed to pay $6 million of its $15 million policy limit.  Class action complaints were filed in the Northern District of California against Maxim and Jasper.  (See *In re Maxim Integrated Products, Inc. Securities Litigation* (N.D. Cal. 2009) 639 F.Supp.2d 1038.)  Maxim paid $173 million to settle the class action.

## A. THE BREACH OF CONTRACT ACTION AGAINST MAXIM

After Jasper exhausted his appeal from the SEC fraud judgment, he sued Maxim, alleging it owed him millions of dollars for stock options granted to him before he resigned in 2007. Maxim counterclaimed to seek a declaration that indemnification was prohibited as a matter of law because Jasper had been found liable for fraud. Maxim also counterclaimed for breach of the indemnification agreement because Jasper had not repaid the amounts Maxim advanced for legal defense costs and the amounts Maxim spent to fund the civil settlements. Jasper tendered Maxim's counterclaims to Federal, which denied coverage.

Jasper settled with Maxim by assigning his policy rights to Maxim and dismissing his causes of action; Maxim and Jasper agreed that a referee would decide Maxim's counterclaims. The referee issued a Statement of Decision finding the conduct alleged in the backdating litigation not indemnifiable under Delaware law, and finding Jasper liable for defense costs in the SEC action (including all appeals) and the class action, as well as for repayment of the class action settlement and pre-judgment interest.

## B. THE COVERAGE ACTION AGAINST FEDERAL AND CHUBB

Maxim and Jasper brought this state court action against Federal and Chubb for breach of contract and breach of the implied covenant of good faith and fair dealing. Maxim and Jasper allege Federal breached the policy in bad faith by disclaiming coverage of Jasper's defense costs in the underlying backdating litigation, refusing to advance Jasper's defense costs to litigate Maxim's counterclaims and refusing Maxim's offer to settle within the policy's limits of liability. Among other things, plaintiffs seek to recover the legal defense costs Maxim advanced on Jasper's behalf in the backdating

litigation, as well as plaintiffs' costs to obtain the policy benefits and damages arising from Federal's failure to provide a defense and indemnification under the Policy.[1]

Defendants moved for summary judgment, asserting (1) Federal's policy does not cover Jasper's claim and (2) Chubb is not a proper party because it did not issue that policy. Plaintiffs sought summary adjudication as to coverage for Jasper's claim (i.e., that the claim falls within the policy's provisions and is not barred by any exclusion).

The trial court granted summary judgment for defendants on both causes of action and denied plaintiffs' summary adjudication motion. The trial court agreed that Jasper's claim was substantially equivalent to "restitutionary damages" excluded from the policy's definition of covered "Loss." The trial court also agreed that Insurance Code section 533 prohibited coverage, reasoning all of Jasper's liability to Maxim, including legal costs, was caused by Jasper's willful actions. The trial court entered judgment for defendants.

## II.    DISCUSSION

Because the material facts are not in dispute, interpretation of the Policy presents a question of law, which we review de novo under well-settled rules of contract interpretation. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 (*Zurich American*); *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647 (*MacKinnon*).) The fundamental goal in construing insurance contracts is to give effect to the mutual intention of the parties, which should be inferred, if possible, from the policy's written provisions. (Civ. Code §§ 1636, 1638; *Zurich American*, at p. 470; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 (*AIU Ins. Co.*) Where policy language is clear and explicit and does not lead to an absurd result, we ascertain this

---

[1] Federal asserts Jasper only tendered a claim for his defense costs incurred in litigating Maxim's counterclaims and that the defense costs in the underlying backdating litigation are not relevant. But Federal stipulated in the trial court that Maxim's counterclaims sought to recover the amounts it spent on Jasper's behalf in defense of the backdating litigation, that the claim for which Maxim and Jasper are seeking coverage in this action is the Maxim counterclaims and that Jasper tendered the Maxim counterclaims to Federal.

4

intent from the written provisions and go no further.  (Civ. Code §§ 1638, 1639; *AIU Ins. Co.*, at p. 822; *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 (*Bank of the West*).)  An insurance policy's words generally are to be understood in their ordinary and popular sense unless the parties use them in a technical sense or "a special meaning is given to them by usage."  (Civ. Code § 1644; *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 191–192 (*Qualcomm*).)

## A.  THE POLICY UNAMBIGUOUSLY COVERS JASPER'S LEGAL COSTS

The parties dispute whether the policy covers Jasper's obligation to repay Maxim the amounts it advanced for his legal defense.  Plaintiffs assert Maxim's advances meet the policy's definition of "Defense Costs" and the policy covers Jasper's reimbursement obligation as a "Non-Indemnifiable Loss" because Maxim refused to indemnify Jasper.  Defendants contend Jasper's obligation to repay Maxim is equivalent to "restitutionary damages," which are excluded from the policy's definition of "Loss," on the theory that Jasper wrongfully obtained and was unjustly enriched by Maxim's payments.  To determine if the policy covers Jasper's obligation to repay Maxim, we begin with the policy's coverage language.

The policy covers "Non-Indemnifiable Loss for which [Jasper] shall become legally obligated to pay as a result of a Claim … against [Jasper] for a Wrongful Act."

The policy defines Non-Indemnifiable Loss as "a Loss incurred by [Jasper] for which [Maxim], … [¶] … refuses to indemnify or advance[.]"  The definition also provides, "For the purposes of this Policy, [Maxim] hereby agrees to indemnify [Jasper] for such Loss and to advance Defense Costs to the fullest extent permitted or required by law."

Loss "means damages, judgments, … settlements and Defense Costs for which [Jasper is] legally obligated to pay" but not "any amount that represents or is substantially equivalent to disgorgement or restitutionary or rescissionary damages, … [or] … matters

5

which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."

Defense Costs "means that portion of Non-Indemnifiable Loss constituting reasonable and necessary fees, costs and expenses … resulting solely from the defense and appeal of a Claim against [Jasper]."

The policy's coverage language, which must be interpreted broadly, is unambiguous. (*MacKinnon*, *supra*, 31 Cal.4th at p. 648 [coverage provisions must be interpreted broadly to afford greatest possible protection to insured].) As stated in the policy, Maxim agreed to indemnify Jasper for Loss (i.e., damages and Defense Costs) and to advance his Defense Costs. The policy insures against the risk that— notwithstanding Maxim's agreement to do so—Maxim might not indemnify Jasper. To that end, the policy covers Jasper's liability for damages and Defense Costs Maxim refuses to indemnify. Maxim's payments for Jasper's legal defense fit the foregoing definitions because Jasper is legally obligated to repay Maxim and Maxim refused to indemnify Jasper after the referee found the conduct alleged in the backdating litigation not indemnifiable under Delaware law,

Defense Costs are specifically exempted from the policy's exclusions for conduct akin to unjust enrichment, criminal or fraudulent conduct, as well as if Maxim sues Jasper, which we interpret as the parties' intent to cover Jasper's legal defense costs as broadly as permitted by law. (See *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [policy terms must be interpreted in context and give effect to every part of the policy with each clause helping to interpret the other].)

The policy's coverage of Jasper's legal costs is also consistent with the generally understood purpose of directors and officers insurance. (See *Qualcomm*, *supra*, 161 Cal.App.4th at pp. 193–194 [assessment of policy language must be made in context of the nature of policy].) Directors and officers insurance "is intended to provide protection for those persons whose business decisions, made by them in their capacity as

6

the management of a corporation, subject them to the risk of personal liability for losses that the corporation or its shareholders may incur." (1 Business Insurance Law & Practice Guide (2024) Directors' and Officers' Liability Insurance, ch. 3.syn.) Such a policy typically "covers loss directly sustained by directors or officers for their wrongful acts that the corporation is not required or not permitted to indemnify." (4 Cal. Insurance Law & Practice (Lexis Nexis 2024) § 43.03.) Directors and officers policies generally define defense costs "as part of 'Damages' for which indemnification is to be paid." (*Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232, 259.) Several courts have recognized that directors and officers policies typically cover the insured's defense costs. (See, e.g., *Xebec Development Partners, Ltd. v. National Union Fire Ins. Co.* 12 Cal.App.4th 501, 529 (*Xebec*) [collecting cases], disapproved on another ground in *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1265 fn. 4; *Continental Ins. Co. v. Superior Ct.* (1995) 37 Cal.App.4th 69, 82 (*Continental*) [directors and officers policies require insurer to reimburse insured for defense costs as a part of defined "loss"]; *August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.* (2007) 146 Cal.App.4th 565, 574 (*August Entertainment*) [same].)

B.     JASPER'S LEGAL COSTS ARE NOT RESTITUTIONARY DAMAGES

### 1. "Restitutionary Damages" Are Limited to Uninsurable Damages

Federal asserts Jasper wrongfully acquired and retained Maxim's payments for his legal defense such that the obligation to repay Maxim is "substantially equivalent" to "restitutionary damages" excluded from the policy's definition of Loss.

The policy does not define "restitutionary damages." Plaintiffs contend the term should be confined to "traditional claims in equity to retrieve monies wrongfully obtained" and therefore does not apply to Jasper's claim because he did not "wrongfully obtain" anything from Maxim. Federal argues the term does not distinguish between legal and equitable relief, and its plain meaning encompasses anything—including

7

Jasper's contractual obligation to pay Maxim—"that is inherently restitutionary in nature."

We reject Federal's broad interpretation of "restitutionary damages" because it is inconsistent both with the term's industry-specific usage, and with the language and purpose of the policy. Policy language should be interpreted as an ordinary person would read it and not as it might be analyzed by an attorney or an insurance expert (*Zurich American*, *supra*, 32 Cal.4th at p. 471), *unless* used by the parties in a technical sense or a special meaning is given to it by usage. (Civ. Code § 1644; *Qualcomm*, *supra*, 161 Cal.App.4th at pp. 191–192.)

In the insurance context, restitution is described as "the return of something wrongfully received." (*Aerojet-General Corp. v. Superior Court* (1989) 211 Cal.App.3d 216, 231.) This specific meaning precludes insuring against the risk of being ordered to return money or property that has been wrongfully received or acquired, in contrast to "damages" as that term is used in insurance policies. (*Bank of the West*, *supra*, 2 Cal.4th at p. 1266 [collecting cases].) The underlying public policy is that when the law requires a wrongdoer to disgorge money or property acquired through a violation of law, permitting the transfer of those costs to an insurer would eliminate the incentive to obey the law. (*Id*. at p. 1269.)

But not everything that can be labeled "restitution" is necessarily uninsurable. The limitation applies only to "an insured's payment of certain types of restitution." (*AIU Ins. Co.*, *supra*, 51 Cal.3d at p. 836.) Coverage is barred "only in ' "situations in which *the defendant is required to restore to the plaintiff that which was wrongfully acquired*." ' " (*Bank of the West*, *supra*, 2 Cal.4th at p. 1270.) In the policy at issue here, this specific meaning of "restitution" is reflected in and consistent with other terms in the same clause: "disgorgement," "rescissionary damages," and "forfeiture of any profits or remuneration" are all forms of uninsurable relief associated with unjust enrichment and the return or restoration of money or property that has been wrongfully acquired or

8

retained. (*Bank of the West*, at p. 1266; *People v. Hernandez* (2017) 10 Cal.App.5th 192, 200 [according to *noscitur a sociis*, a word of uncertain meaning may be known from its associates and its meaning enlarged or restrained by reference to the object of the whole clause in which it is used.]) In addition, the same clause referring to "disgorgement, restitutionary or rescissionary damages, or forfeiture of any profits or remuneration," appears within a larger list of similarly uninsurable matters, including civil or criminal fines or penalties imposed by law, taxes, as well as a catch-all reference to any other "matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed." (See *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385 [civil or criminal fines or penalties imposed by law cannot be indemnified or insured under Ins. Code § 533]; *Mortenson v. National Union Fire Ins. Co.* (7th Cir. 2001) 249 F.3d 667, 671–672) [tax payments not insurable].)

This interpretation also comports with the purpose and intent of directors and officers insurance policies that cover an insured's defense costs as part of "damages" and "loss". (See *Xebec*, *supra*, 12 Cal.App.4th at p. 739; *Continental*, *supra*, 37 Cal.App.4th at p. 82; *August Entertainment*, *supra*, 146 Cal.App.4th at p. 574.) As discussed, the policy's broad coverage language, as well as the policy's exclusions also excepting Defense Costs, indicate an unambiguous intent to cover Jasper's non-indemnifiable legal costs to the fullest extent permissible by law.

### 2. Jasper Did Not Wrongfully Acquire Payment from Maxim

We are not persuaded by Federal's argument that Jasper "wrongfully retained and kept" Maxim's advances and thereby gained a "windfall in keeping litigation defense fees and costs to which he was not entitled." Nor are we persuaded by Federal's alternative argument that even if Jasper did not wrongfully obtain Maxim's advances (which Federal does not dispute were properly made pursuant to the indemnification agreement), by "keeping that money, Jasper 'wrongfully obtained' money to which he was not entitled and which he was required to repay." Under either scenario, Federal cites no evidence of

9

Maxim paying anything to Jasper directly, nor of Jasper (wrongfully or otherwise) acquiring, receiving or retaining any money from Maxim. To the contrary, Maxim represents it paid "the Latham firm for Jasper's defense" and the parties stipulated in the trial court that throughout the backdating litigation, "Jasper was represented by counsel whose fees were paid by Maxim pursuant to an Indemnification Agreement it had with Jasper."

Federal also mischaracterizes the Stipulated Judgment against Jasper as a "restitutionary award" requiring "disgorgement of Jasper's improper acquisition of Maxim's money or restitution of that money." Maxim did not seek—and could not have sought—disgorgement or restitution from Jasper because of the indemnification agreement between them. (See *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231 [action seeking restitution based on quasi-contract claim cannot lie where a valid express contract between the parties covers the same subject matter, unless contract is procured by fraud or is unenforceable or ineffective for some reason].) Rather, Maxim sought money damages for breach of contract, alleging "Jasper has breached the Indemnification Agreement by … refusing and failing to reimburse Maxim" for the fees and costs Maxim advanced in defense of the backdating litigation and the settlement amounts Maxim paid in the civil suits. The referee's Statement of Decision, upon which the Stipulated Judgment is based, did not find Jasper either wrongfully obtained or kept Maxim's advances. The referee awarded *contract damages* to Maxim because "Jasper breached the Indemnification Agreement by failing to repay Maxim for the costs of all expenses incurred by Maxim that were non-indemnifiable."

Nor are we convinced by Federal analogizing Jasper's obligation to repay Maxim to an insurer's "restitutionary" right to reimbursement for reasonable settlement payments and defense costs advanced on an insured's behalf in instances where a policy never afforded potential coverage for particular claims against the insured. (See *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489 [reimbursement of reasonable settlement costs

10

for noncovered claims]; *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 659 [reimbursement of defense costs for noncovered claims]; and *Buss v. Superior Court* (1997) 16 Cal.4th 35 [defense costs reimbursable to the extent third party claim not potentially covered].)  An insurer in such a case is entitled to restitution because it is obligated by law to defend an action in its entirety, even when it is clear that a policy does not cover some of the claims; otherwise "the insured, who did not bargain for a defense of noncovered claims, would receive a windfall and would be unjustly enriched." (*Scottsdale Ins. Co.*, at p. 659.)

Those decisions did not involve directors and officers insurance policies, and they are referring to "restitution" in a broad sense, not construing it as a policy term.  And unlike the insureds in *Blue Ridge*, *Scottsdale* and *Buss*, Jasper *did* bargain with Maxim for indemnification and Maxim *did* bargain with Federal for coverage of Jasper's non-indemnifiable legal costs.  Plaintiffs are therefore not receiving a windfall for which they did not bargain.  Maxim paid Federal a premium to obtain insurance against a particular risk; there is nothing improper in expecting coverage when that risk is realized.

For similar reasons, Federal unpersuasively analogizes this case to *Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis and Furstman* (9th Cir. 1995) 68 F.3d 347, 351–352, which held a malpractice insurance policy did not cover an attorney's claim for an unearned fee he was required to return due to an intervening conflict of interest.  The *Republic Western* court explained the payment at issue was not covered damages under the malpractice policy because extending coverage to restitution where the attorney was unable to perform the bargained-for legal services would effectively require the insurer to pay the attorney an unearned legal fee.  (*Ibid*.)  But there again, the policy at issue in *Republic Western* was not a directors and officers policy specifically intended to insure against the risk that an insured's company might refuse to indemnify the insured for legal defense costs.

11

Federal compares this case to *August Entertainment* and argues Jasper is improperly attempting to shift his contractual obligation to pay Maxim onto Federal because his liability is not "a loss resulting from a wrongful act within the meaning of the policy." (*August Entertainment*, *supra*, 146 Cal.App.4th at pp. 581–582.) Unlike *August Entertainment*, however, this is not a situation where an insured has breached an unrelated contract and is attempting to "turn all of its legal liabilities into insured events by the intentional act of refusing to pay them." Nor is Jasper attempting to make Federal a "business partner … which was not the mutual intention of the insurer and the insured under the policy." (*August Entertainment*, at pp. 569, 578.) Here, Maxim purchased the policy for the purpose of insuring Jasper's non-indemnifiable legal costs. Neither Maxim nor Jasper intentionally breached the indemnification agreement, which was determined by the referee to require Jasper's repayment because Maxim was no longer permitted by law to indemnify Jasper.

## C. INSURANCE CODE SECTION 533 DOES NOT PROHIBIT COVERAGE

Federal contends Insurance Code section 533 prohibits plaintiffs from recovering Jasper's legal costs under the policy. (Statutory references are to the Insurance Code.) Under section 533, "An Insurer is not liable for a loss caused by the willful act of the insured, but he is not exonerated by the negligence of the insured or of the insured's agents or others." The prohibition discourages willful torts and reflects a fundamental public policy to deny insurance coverage for willful wrongs. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 499–500; *Evans v. Pacific Indemnity Company* (1975) 49 Cal.App.3d 537, 541 [section 533 "reflects the very sound and long standing public policy (also contained in Civ. Code § 1668) which disapproves of contracts which directly or indirectly exempt anyone from personal responsibility for his own willful injury to another"].) An implied exclusionary clause is read into all insurance policies, preventing the parties to an insurance policy from contracting for such coverage. (*Downey*, at pp. 499–500.)

However, section 533 "forbids only contracts which *indemnify* for 'loss' or 'responsibility' resulting in wilful wrong-doing." (*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 277.) It does not prohibit contracts providing for defense against an action alleging willful misconduct because such an agreement does not provide for *indemnification* if the insured is found liable. (*Combs v. State Farm Fire & Casualty Co.* (2006) 143 Cal.App.4th 1338, 1344 ["section 533 does not necessarily preclude insurance coverage for the defense of an action in which the insured ultimately is found liable for willful misconduct"]); see also *Mt. Hawley Inc. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1417 [collecting cases holding section 533 does not extinguish, prohibit or relieve an insurer's duty to defend even when statute precludes indemnification].)

Without supporting authority, Federal argues that section 533 necessarily prohibits insuring the costs of a legal defense. But we see no meaningful difference—aside from who directs the defense—between providing a legal defense and paying for one. (Accord *Acacia Research Corp. v. Nat'l Union Fire Ins.* (C.D. Cal. 2008) U.S. Dist. LEXIS 127427 (C.D. Cal., Apr. 23, 2008) at *11. ["[A]s with a duty to defend, Defendant's duty to advance defense costs arose on tender of a potentially covered claim"]; *Federal Ins. Co. v. Sammons Fin. Group, Inc.* (S.D. Iowa 2009) 595 F.Supp.2d 962, 976–977 [collecting cases viewing duty to defend and advancing defense costs as "congruent"].)

Federal relies on *California Amplifier, Inc. v. RLI Insurance Co.* (2001) 94 Cal.App.4th 102 to argue the trial court correctly determined section 533 prohibits coverage. *California Amplifier* held section 533 precluded coverage of a class action settlement under a directors and officers liability policy because the insureds had knowingly made false statements intended to inflate the company's stock price. But the *California Amplifier* court was not presented with the question, and therefore did not decide, whether section 533 also precludes recovery of defense costs.

13

Finally, we reject Federal's argument that it would violate section 533 to permit "Jasper to profit from both his fraud and subsequent dishonoring of his contractual obligations." As with its assertions that Jasper wrongfully acquired and retained Maxim's advances, Federal cites no evidence of Jasper profiting by virtue of the policy's coverage.

### D. CERTAIN POLICY EXCLUSIONS DO NOT APPLY TO DEFENSE COSTS

Federal points to three policy exclusions as alternative grounds to affirm the judgment. Federal argues coverage is barred by Exclusion IV(f) (for claims brought by Maxim against Jasper), Exclusion IV(a) (for Non-Indemnifiable Loss arising from improperly gaining profit, remuneration or financial advantage), and Exclusion IV(b) (for Non-Indemnifiable Loss derived from committing a criminal or fraudulent act). Exclusionary provisions that limit or take away coverage are "strictly construed against the insurer and liberally interpreted in favor of the insured", while exceptions to exclusions are broadly construed in favor of the insured. (*Delgado v. Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271; *Zurich American, supra,* 32 Cal.4th at p. 471.))

Each of the exclusions at issue expressly states it "shall not apply to Defense Costs." The plain meaning of that language contradicts Federal's position.

### E. PLAINTIFFS HAVE FORFEITED THEIR CHALLENGE TO CHUBB'S DISMISSAL

The trial court did not address Chubb's argument that it was not a proper party because Chubb did not issue the policy. Defendants note plaintiffs have forfeited this issue by not addressing it on appeal, and plaintiffs offer no response. The parties stipulated Chubb did not issue the policy. Given that plaintiffs also failed to oppose Chubb's motion for summary judgment in the trial court, plaintiffs effectively concede that the trial court properly granted summary judgment in Chubb's favor. (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concession implicit in failure to reply to respondent's argument].)

14

### III.    DISPOSITION

The judgment is reversed and the matter is remanded with directions to vacate the order granting defendants' motion for summary judgment and to enter a new order granting Chubb National Insurance Company's motion and denying Federal Insurance Company's motion.  Plaintiffs are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)

_____
Grover, J.

**WE CONCUR:**

_____
Greenwood, P. J.

_____
Lie, J.

H050804
*Jasper et al. v. Chubb National Insurance Company et al.*